# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 26, 2010

No. 09-60257

Lyle W. Cayce
Clerk

ANTONIO MARMORATO,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A011-072-742

Before DEMOSS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Antonio Marmorato appeals *pro se* the decision of the Board of Immigration Appeals, which affirmed an Immigration Judge's denial of his application for deferral of removal under the United Nations Convention Against Torture (CAT). Marmorato contends[1] that both the Board of Immigration Appeals (BIA) and the Immigration Judge (IJ) applied the incorrect standard in

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

[1] We conclude that this appeal was timely filed. Marmorato was in federal detention when he filed the notice, such that the "mailbox rule" applies. Because this court received the petition in the mail one day after the deadline for its filing, it must have been timely mailed.

No. 09-60257

determining whether the Italian Government would acquiesce in his torture, that he received ineffective assistance of counsel, and that the Immigration and Naturalization Service is estopped from bringing removal proceedings against him where it acted with malice in denying his request for citizenship. We GRANT the petition in part, and DENY it in part.

## I. FACTS AND PROCEDURAL HISTORY

Marmorato, a native and citizen of Italy, became a lawful permanent resident of the United States in 1957. In July of 2003, he was convicted of the offenses of conspiracy to import and possess with intent to distribute cocaine, importation of cocaine, and possession with intent to distribute cocaine. He was sentenced to fourteen years confinement. While Marmorato was incarcerated in Brooklyn, New York, he provided substantial assistance to the Office of the Inspector General (OIG) regarding the illegal importation of contraband to inmate members of Italian families through visitors to the facility and by federal employees such as correctional officers and case managers. Throughout 1996 and 1997, Marmorato served as a confidential informant to an OIG special agent. During the period Marmorato assisted the OIG, the Inspector General secured fourteen arrests related to illegal contraband importation, the most significant of which involved a case manager for the Bureau of Prisons. The investigation revealed that prison guards were bringing contraband to members of Italian families, particularly a "mafia family captain" who was housed at Marmorato's institution. Marmorato was never called to testify in a trial or proceeding, but his sister testified regarding the dates upon which payment transfers were made.

In April 2008, the Department of Homeland Security charged Marmorato with removal under 8 U.S.C. § 1227(a)(2)(A)(iii) for his conviction of an aggravated felony. With the assistance of counsel, Marmorato conceded that he

2

No. 09-60257

was removable as charged, and the IJ ordered him removed to Italy. The IJ found that he was statutorily ineligible for withholding of removal due to his conviction for a "particularly serious crime." *See* 8 U.S.C. § 1231(b)(3)(B)(ii). Marmorato sought a  deferral of removal pursuant to Article III of the United Nations Convention Against Torture (CAT) on the ground that his assistance to the OIG would lead to his torture in Italy. He claimed to be particularly fearful because his information helped the secure the conviction of an inmate for contraband violations, and both the inmate and the inmate's brother had strong connections to Italian families who had government ties. Following a hearing, the IJ denied relief, finding that Marmorato could not demonstrate a nexus between the torture he feared and the national Italian government. The IJ also found that any local government official who aided families of criminals in locating Marmorato would be acting as a private actor, and those actions could not be attributable to the government.  Based on these findings, the IJ denied all forms of relief and ordered Marmorato removed to Italy.

Marmorato appealed to the Board of Immigration Appeals (BIA) arguing that it was sufficient for him to be able to show a nexus between the families of the criminals and local government agents, and additionally, that the IJ erred in failing to find a nexus between the feared torture and an Italian government official. He also asserted that his counsel was ineffective for failing to present such evidence, and he disputed that he had been convicted of a "particularly serious crime" on the grounds that he was in a state of diminished capacity. He also faulted his former counsel for failing to raise and thereby preserve his argument that the government acted with malice in wrongfully denying of his claim for citizenship, and for failing to argue that the "state created danger" doctrine prevented the government from deporting him where he was now in danger from his aid to the government. The BIA found "no error" in the IJ's decision and concluded that Marmorato had failed to submit evidence showing he would be tortured, and concluding that he had failed to show that the Italian government worked in collusion with the people who might torture Marmorato.

The BIA likewise found that Marmorato had not established that his counsel was ineffective, so he was not entitled to a grant of a motion to reopen. Marmorato has since filed a timely petition for review.

## II. JURISDICTION AND STANDARD OF REVIEW

The Immigration and Nationality Act provides that an alien who "is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Marmorato does not dispute that he was convicted of an aggravated felony. Although 8 U.S.C. § 1252(a)(2)(C) generally prohibits judicial review of removal orders issued on the basis of an alien's commission of an aggravated felony, the REAL ID Act provides that none of its jurisdiction-stripping provisions "'shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals.'" *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009) (quoting 8 U.S.C. § 1252(a)(2)(D)); *see also Ahmed v. Mukasey*, 300 F. App'x 324, 327 (5th Cir. 2008) (unpublished). Constitutional issues and questions of law regarding the interpretation of CAT are no exception. *See Ahmed,* 300 F. App'x at 327; *Reyes-Gomez v. Gonzales*, 163 F. App'x 293, 296 (5th Cir. 2006) (unpublished); *see also Saintha v. Mukasey*, 516 F.3d 243, 248 (4th Cir. 2008); *Toussaint v. Att'y General,* 455 F.3d 409, 412 n.3 (3d Cir. 2006) (finding that a court may review a CAT claim submitted in a proper petition for review, but its "jurisdiction extends only to constitutional claims and questions of law.") (internal citations omitted)). Thus, we may review Marmorato's claims only to the extent that they raise a colorable question of law or a constitutional claim. We review the BIA's conclusions of law de novo, with substantial deference to interpretations of statutes and regulations administered

No. 09-60257

by the agency. *See Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 675 (5th Cir. 2007).

## III.  DISCUSSION

### A.  Convention Against Torture Claim

Marmorato urges the court to review the BIA's affirmation of the IJ's conclusion that Marmorato failed to show that he was entitled to relief under Article III of the Convention Against Torture.  The BIA's order dismissing his appeal expressly adopted and affirmed, with exceptions deemed harmless, the IJ's "ultimate conclusion" that Marmorato had not established eligibility for relief under CAT.  *See* 8 C.F.R. §§ 1208.16(c)(2); 1208.18(a)(1).   Our review ordinarily is limited to the BIA's decision, but where, as here, the BIA adopts the decision of the IJ, albeit with modifications, this court must review the IJ's decision.  *See Mikhael v. INS,* 115 F.3d 299, 302 (5th Cir. 1997); *see also Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007) (noting that the court reviews the IJ's decision when the IJ's ruling affects the BIA's decision).  Marmorato argues that both the IJ and the BIA employed the incorrect legal standard for determining whether torture would be "inflicted by or at the instigation of or with the consent or *acquiescence* of a public official or other person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1) (emphasis added).  He also contends that the BIA did not apply the proper standard of review to the IJ's findings of fact in determining that Marmorato had failed to show that he had not shown that it was "more likely than not that he . . . would be tortured if removed" to Italy.  § 1208.16(c)(2).  Both of these claims concern questions of law, so we may review them.

No. 09-60257

**1. The Legal Standards Implemented by the IJ and the BIA**

For a petitioner to be entitled to a deferral of removal under CAT, he must show that he is "more likely than not" that "he [will] be tortured if removed to the proposed country of removal." § 1208.16(c)(2). An act is not considered "torture" under the act unless it is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." § 1208.18(a)(1). In his oral decision, the IJ explained the acquiescence inquiry as follows:

> In order for acquiescence to occur, the officers who know that torture will occur have to be acting in an official capacity and essentially ignore their duty. In this particular case, the Respondent is indicating that it is corrupt officers who might become aware of his presence, inform the mafia of his presence, and then turn their back on their duties in regards to any torture that might be inflicted . . . . The Court finds that this is not in the official capacity of an officer of the Italian government.
>
> The torture convention was basically passed by Congress with the provision of protecting people from the activities of rogue governments who have no regard for human rights or civil rights. Categorically, the Respondent has not shown the Italian government is likely to do this, and as a result, the Court cannot find that private acts by individuals, even under the cloak of being a government official when they are acting on behalf of not the government of Italy but on behalf of this mafia organization, are not attributable to the Italian government and not covered under the torture convention."

Marmorato argues that the IJ misinterpreted the proper acquiescence standard by determining that a "corrupt government official" could not be a "government official" for the purposes of the legal standard enunciated in § 1208.18(a)(1), and by determining that the "sole purpose of the CAT is to protect an alien from a rogue government with no respect for civil rights." The Government argues that there is no merit to the claim that the IJ employed an incorrect standard because it "cited to the correct regulation, 8 C.F.R.

6

§ 1208.18(a)(1)." This argument is inapposite. "Common sense as well as the weight of authority requires that we determine whether the [IJ] *applied* the correct legal standard, not simply whether it *stated* the correct legal standard." *Alvarado de Rodriguez*, 585 F.3d at 235 (citation and internal quotation marks omitted).[2]

We agree with Marmorato that the IJ announced an erroneous legal standard when it determined that acts conducted "under the cloak of being a government official" do not satisfy the standard of § 1208.18(a)(1), as that section explicitly covers acts done by public officials acting in their "official capacity." Although the regulation does not define "official capacity," the Attorney General has interpreted that phrase to mean "under color of law." *See In re Y-L-*, 23 I. & N. Dec. 270, 285 (AG 2002) (*citing Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001)). Our circuit has not addressed the agency's interpretation of "in an official capacity" in a published opinion, but we adopted the Attorney General's interpretation of "official capacity" in a recent unpublished case, *Ahmed v. Mukasey*. 300 F. App'x 324 (5th Cir. 2008) (unpublished). There, we stated that "[t]o prove entitlement to protection under CAT, the applicant must demonstrate that, if removed to his country of origin, it is more likely than not that he would be tortured by, or with the acquiescence of, government officials *acting under color of law*." *Id*. at 327-28 (citing 8 C.F.R. § 1208.16(c)(2)) (emphasis added). The Eighth Circuit, in *Ramirez-Peyro v. Holder* (*Ramirez-Peyro II*), explicitly followed *Ahmed* in "adopt[ing]" as reasonable "the agency's interpretation of 'in

---

[2] The Government argues that Marmorato waived these arguments by failing to brief them and by failing to brief his challenge to the appropriate standard in his brief to the BIA. We reject this argument, as Marmorato did brief these issues before the BIA. Although Marmorato's thorough briefing makes it unnecessary for us to broadly construe his arguments in order to find them to be preserved, we note that his status as a *pro se* petitioner entitles him to greater leeway than he would be afforded if he had counsel. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam).

No. 09-60257

an official capacity' as the equivalent of 'under color of law' as used in the civil-rights context." 574 F.3d 893, 900 (8th Cir. 2009).

When we consider whether the IJ interpreted "under color of law" as we would in a civil rights case, its legal error is immediately apparent. Our circuit has long recognized that "an act is under color of law when it constitutes a '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *United States v. Causey*, 185 F.3d 407, 442 (5th Cir. 1999) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961)). We have recognized on numerous occasions that acts motivated by an officer's personal objectives are "under color of law" when the officer uses his official capacity to further those objectives.[3] *See, e.g., Townsend v. Moya*, 291 F.3d 859, 861-62 (5th Cir. 2002); *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1996). Conflating an officer's breach of authority with the abandonment of that authority would also render meaningless 8 C.F.R. § 1208.18(a)(7), which states that "[a]cquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter *breach* his or her legal responsibility to intervene to prevent such activity." (emphasis added). A public official who uses his office for personal motivations can nonetheless be acting in his official capacity.

---

[3] *Compare Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996) (finding that an officer's action was "under color of state law" where a sheriff raped a woman and used his position to ascertain when her husband would be home and threatened to have her thrown in jail if she refused) *with Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (per curiam) (finding no action under color of law where a police chief assaulted his sister-in-law over personal arguments about family matters, but did not threaten her with his power to arrest).

Other circuits would find the IJ's interpretation to be in error as well, as the Eighth Circuit rejected a near-identical formulation as erroneous. *See Ramirez-Peyro II,* 574 F.3d at 904 (rejecting, as a misinterpretation of the "official capacity" inquiry, the BIA's statement that "even assuming law enforcement would consent or acquiesce to torture at the hands of the Cartel, they again 'would not be acting under the pretense of law [but] following a purely personal pursuit' by acquiescing to the Cartel's actions.")

The IJ also misinterpreted the "official capacity" inquiry and the very purpose of the CAT by stating that the § 1208.18(a)(1) inquiry could never be satisfied in a country like Italy, but only in nations with "rogue governments" with "no regard for human rights or civil rights." We reject any notion that a petitioner's entitlement to relief depends upon whether his country of removal could be included on some hypothetical list of "rogue" nations.  Rather, the "color of law" inquiry turns upon the nexus between the petitioner, the improper conduct of those officials in question, and the officers' performance of their official duties[4]—not upon sweeping characterizations of the nation in question. To the contrary, proving action in an officer's official capacity "does not require that the public official be executing official state policy or that the public official be the nation's president or some other official at the upper echelons of power. Rather . . . the use of official authority by low-level officials, such a[s] police officers, can work to place actions under the color of law even where they are without state sanction." *Ramirez-Peyro II*, 574 F.3d at 901 (citing *Screws v. United States*, 325 U.S. 91, 111 (1945)) *see also Silva-Rengifo v. Atty. Gen.*, 473 F.3d 58, 68, n.7 (3d Cir. 2007) (noting that an "alien can establish sufficient collusion between groups in the country, or factions within the government itself, whose actions are tolerated, if not condoned by *those in government*." (emphasis added)); *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir. 2002) (considering evidence of acquiescence by low-level officials (such as local police) and high-level officials (such as the President of Honduras)). Here, the IJ erred in limiting its official capacity inquiry to only those agents at the highest levels of national government, to the exclusion of those agents lower in the chain of command whom Marmorato claims would acquiesce in the anticipated torture.

---

[4] *Townsend v. Moya,* 291 F.3d 859, 865 (5th Cir. 2002).

No. 09-60257

Where the BIA adopted the IJ's decision with amendments, we must also review the BIA's decision to determine whether the legal error that infected the IJ decision also permeates the BIA opinion. We find that it does. The BIA's mistake essentially tracks the same path as that of the IJ. The error here is not as clear as it was in the IJ opinion, as the BIA did not restate the IJ's sweeping generalization that no action by a public official in Italy could be considered acquiescence where Italy was not a rogue government. But in determining whether Marmorato could show that torture would be inflicted with the "acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1), it faulted Marmorato for failing to show that the *national government* would be willfully blind or otherwise acquiesce in torture. As stated above, "the use of official authority by low-level officials, such a[s] police officers, can work to place actions under the color of law even when they are without state sanction," *Ramirez-Peyro II*, 574 F.3d at 901, and such action "under color of law" is sufficient to satisfy the requirements of § 1208.18(a)(1); *see In re Y-L-*, 23 I. & N. Dec. 270, 285 (AG 2002). Public officials' acquiescence to torture is not restricted to the upper tiers of government—it may be demonstrated by the corruption of the lower levels of government as well. Because the BIA incorporated the IJ's misunderstanding of the "official capacity" requirement into its acquiescence inquiry, this question must be remanded to the BIA to be decided under the proper standard. Marmorato also challenges the BIA's analysis of the findings of fact underlying the torture inquiry.[5] We conclude that the BIA should have the opportunity to address these questions

---

[5] By law, the BIA may review the IJ's findings of fact only for clear error, 8 C.F.R. § 1003.1(d)(3)(i), and it "may not may not re-weigh the evidence and substitute its own judgment for that of the IJ absent clear error." *See Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 235 (5th Cir. 2009); *see also* 8 C.F.R. § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts . . . the Board will not engage in factfinding in the course of deciding appeals.").

No. 09-60257

in the first instance under the proper legal standard as discussed herein. Accordingly, we do not address the factual findings challenges at this point.

## B. Claim for Estoppel Based on Alleged Wrongful Denial of Citizenship

Marmorato also argues that the removal proceedings against him must be terminated because the United States is equitably estopped from denying his citizenship when the "INS acted purposefully and deliberately [to] deny [him] citizenship outside the bounds of law." To the extent that he raises his estoppel claim separately from his argument that his counsel was ineffective in failing to raise this argument before the IJ, Marmorato has not provided any argument supporting this court's ability to grant him relief through equitable estoppel. *See Andrade v. Gonzales*, 459 F.3d 538, 545 n.2 (5th Cir. 2006) ("It is unclear whether equitable estoppel can ever apply to the Government, but in any event, equitable estoppel will not lie against the Government as against private litigants." (citation and internal quotation marks omitted)); *see also Moosa v. INS*, 171 F.3d 994, 1003 (5th Cir. 1999). Moreover, although he alleges that INS engaged in misconduct when it denied his petition for citizenship more than thirty years ago, the record reveals that he was again denied citizenship on April 14, 2008 because he did not meet the statutory requirement of establishing that his parents naturalized before his eighteenth birthday. Marmorato has not argued that any act of misconduct prevented him from making such a showing, or that this determination was inaccurate. Therefore, we DENY his petition for review on this ground.

## CONCLUSION

Accordingly, Marmorato's petition for review is GRANTED IN PART and DENIED IN PART. We VACATE the BIA's affirmance of the IJ's denial of Marmorato's motion for deferral of removal. On REMAND, the BIA must consider whether Marmorato will, more likely than not, be tortured, and whether that torture will  inflicted by or at the instigation of or with the consent

11

No.  09-60257

or acquiescence of a public official at any level of government or other person acting under color of law. *See* §§ 1208.16(c)(2); 1208.18(a)(1).  In making this determination, the BIA must review the fact-findings of the IJ for clear error only.  The BIA is also instructed to remand to the IJ for any additional fact-findings that are necessary for the BIA to make its determination.  As remand is necessary, we do not reach the Marmorato's claim that he was denied due process by ineffective assistance of counsel.  We DENY the petition insofar as it concerns his request for estoppel.