## Matter of O-F-A-S-, Respondent

*Decided by Attorney General July 14, 2020*

U.S. Department of Justice
Office of the Attorney General

(1) Under Department of Justice regulations implementing the Convention Against Torture, an act constitutes "torture" only if it is inflicted or approved by a public official or other person "acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). This official capacity requirement limits the scope of the Convention to actions performed "under color of law." *Matter of Y-L-*, 23 I&N Dec. 270 (A.G. 2002). Nothing in *Matter of Y-L-*, or any other Board precedent, should be construed to endorse a distinct, "rogue official" standard.

(2) The "under color of law" standard draws no categorical distinction between the acts of low- and high-level officials. A public official, regardless of rank, acts "under color of law" when he "exercise[s] power 'possessed by virtue of . . . law and made possible only because [he was] clothed with the authority of . . . law.'" *West v. Atkins*, 487 U.S. 42, 47 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2020), I direct the Board of Immigration Appeals ("Board") to refer this case to me for review of its decision. With the case thus referred, I hereby vacate the Board's decision and remand this case for review by a three-member panel.

In *Matter of O-F-A-S-*, 27 I&N Dec. 709 (BIA 2019), the Board dismissed an appeal by the respondent of an immigration judge's decision denying, among other relief, the respondent's claim for protection under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) ("CAT"). The respondent is a native and citizen of Guatemala. He alleges that he will be tortured if he is removed to Guatemala, citing a prior incident in which five men wearing police uniforms and wielding high-caliber handguns forced their way into his home, assaulted him, stole his money, and threatened further harm to him and his family. Based on findings that the men either were not police officers or were "rogue agent[s] acting outside the scope of law," the immigration judge concluded that the respondent had not met his burden to show it is more likely than not that he will be tortured by or with the instigation, consent, or acquiescence of a public official or other person "acting in an official capacity." *See*

8 C.F.R. § 1208.18(a)(1). The Board agreed and dismissed the respondent's appeal.

In so doing, the Board announced a "national standard" for the "official capacity" requirement, *Matter of O-F-A-S-*, 27 I&N Dec. at 715—a standard it described at times as an "under color of law" inquiry, *id.* at 717, and at others as "the rogue official question," *id.* I granted review of this case to clarify the proper approach for determining when public officials who commit torture are "acting in an official capacity" for the purpose of deciding an alien's eligibility for protection under the CAT.

* * *

The implementing legislation for the CAT provides that "it shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, div. G, § 2242, 112 Stat. 2681-761, 2681-822 (codified at 8 U.S.C. § 1231 note (1999)). Consistent with this policy, the Department of Justice has promulgated regulations that prohibit the removal of an alien to a country where it is "more likely than not" that the alien would be tortured. 8 C.F.R. § 1208.16(c)(2); *see generally id*. §§ 1208.16(c)–1208.18. Those regulations define "torture" as "any act by which severe pain or suffering . . . is intentionally inflicted on a person" for an illicit purpose. *Id*. § 1208.18(a)(1). The "pain or suffering" must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting *in an official capacity*." *Id*. (emphasis added).

The Attorney General first considered the meaning of the "official capacity" requirement in *Matter of Y-L-*, 23 I&N Dec. 270 (A.G. 2002). There, Attorney General Ashcroft explained that the official capacity requirement confines the scope of the Convention "to torture that is inflicted under color of law." *Id*. at 285; *see also id*. at 279 ("To secure [CAT] relief, the respondents must demonstrate that, if removed to their country of origin, it is more likely than not they would be tortured by, or with the acquiescence of, government officials acting under color of law." (emphasis removed)). In applying that general rule, *Matter of Y-L-* elaborated that the acts of "corrupt, low-level agents" who "seek to exact personal vengeance . . . for personal reasons" do not constitute "torture" under the CAT. *Id.* at 285; *see id.* at 283 (rejecting contention that government acquiescence could be shown "by evidence of isolated rogue agents engaging in extrajudicial acts of brutality").

*Matter of Y-L-*'s description of the "official capacity" standard—and the way the immigration courts have applied that standard—has led some

observers to question whether two different tests have evolved in the immigration courts for determining whether torture is inflicted "in an official capacity." Every federal court of appeals to consider the question has read *Matter of Y-L-* to hold that action "in an official capacity" means action "under color of law." *See, e.g.*, *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014); *United States v. Belfast*, 611 F.3d 783, 808–09 (11th Cir. 2010); *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009); *see also Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001) (adopting "under color of law" standard in an opinion preceding *Matter of Y-L-*). Relying on their precedents under 42 U.S.C. § 1983, those courts have held that "an act is under color of law when it constitutes a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *E.g.*, *Garcia*, 756 F.3d at 891. But some immigration judges have eschewed the "under color of law" rubric and instead focused on *Matter of Y-L-*'s language distinguishing between "authoritative" and "rogue" officials. Reviewing courts have interpreted those immigration court decisions as applying a distinct "rogue official" test, under which the "extrajudicial" acts of "corrupt, low-level agents" will not constitute torture if government authorities would neither condone nor acquiesce in the low-level agents' behavior.[1] *See, e.g.*, *Marmorato v. Holder*, 376 F. App'x 380, 384–85 (5th Cir. 2010) (reversing IJ's determination that "acts conducted 'under the cloak of being a government official' do not satisfy the [official capacity] standard," and faulting immigration judge for "announc[ing] an erroneous legal standard").

The decisions of the immigration judge and the Board in this case illustrate why some reviewing courts believe that the immigration courts have developed multiple tests for determining whether torture would be inflicted by someone acting "in an official capacity." The immigration judge

---

[1] Decisions by immigration judges are not generally available to the public, but the following cases that were appealed to the federal courts of appeals are examples where immigration judges applied the "rogue official" label: *Hernandez-Torres v. Lynch*, 642 F.App'x 814, 817 n.1 (10th Cir. 2016) ("The IJ characterized the low-level government officers who threatened Mr. Hernandez-Torres as 'rogue government officials' and contrasted those rogue officials with his 'police superiors who did not threaten [him][.]'"); *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1139 (7th Cir. 2015) (quoting immigration judge's statement that "the police officers who tortured the petitioner 'were rogue officers individually compensated . . . to engage in isolated incidents of retaliatory brutality, rather than evidence of a broader pattern of governmental acquiescence in torture'"); *Higueros v. Holder*, 582 F. App'x 692, 693 (9th Cir. 2014) ("In assessing Higueros's fear of torture, the BIA acknowledged the evidence showed the existence of 'rogue officials' in Guatemala, and found the existence of rogue officials 'cannot be used' to demonstrate that government officials would acquiesce to any torture of Higueros."); *Marmorato v. Holder*, 376 F. App'x 380, 384–85 (5th Cir. 2010).

concluded that the respondent's assailants were "rogue actors who were either not police officers" or "bad police officers acting outside the scope of their authority." Relying solely on the "rogue agent" discussion in *Matter of Y-L-*, the immigration judge held that the CAT does not cover "rogue agent[s] acting outside the scope of law, motivated by personal gain."

The Board agreed with the immigration judge's conclusion that the respondent's assailants were not acting "in an official capacity" and dismissed the respondent's appeal, but reached that conclusion through different reasoning. Also citing *Matter of Y-L-*, the Board emphasized that "'in an official capacity' means 'under color of law'"—a phrase absent from the immigration judge's decision. 27 I&N Dec. at 714. The Board explained that, because action "under color of law" characteristically involves "misuse[]" of "power possessed by virtue . . . of law," *id.* at 715 (quotations omitted), certain acts motivated by personal objectives *can* fall within the CAT's scope. The Board clarified that "[a]n act that is motivated by personal objectives is under color of law when an official uses his official authority to fulfill his personal objectives." *Id.*

In an apparent attempt to resolve any confusion about the "under color of law" and "rogue official" standards and whether those standards establish different tests, the Board explained that "under the treaty and its implementing regulation, torturous conduct committed by a public official who is acting 'in an official capacity,' that is, 'under color of law' is covered by the Convention Against Torture, but such conduct by an official who is not acting in an official capacity, *also known as a 'rogue official,'* is not covered by the Convention." *Id.* at 713 (emphasis added). "[R]ogue official[s]," the Board explained, is simply a label for "public officials who act outside of their official capacity, or in other words, not under color of law." *Id.* at 713–14. On the facts presented, the Board concluded that the respondent's assailants did not act "under color of law" and were therefore "rogue officials."

To the extent the Board used "rogue official" as shorthand for someone not acting in an official capacity, it accurately stated the law. By definition, the actions of such officials would not form the basis for a cognizable claim under the CAT. But continued use of the "rogue official" language by the immigration courts going forward risks confusion, not only because it suggests a different standard from the "under color of law" standard, but also because "rogue official" has been interpreted to have multiple meanings. *Compare Matter of O-F-A-S-*, 27 I&N Dec. at 713–14 (a rogue official is one who acts outside of his or her official capacity), *with Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1139 (7th Cir. 2015) ("rogue" means "not serving the interests of the [entire] government"). For this reason and those described more fully below, I agree with the Board that the "under color of law"

standard is correct, and that it is the only standard that immigration courts should apply when evaluating claims for protection under the CAT.

The relevant judicial backdrop, the CAT's ratification history, and subsequent judicial interpretation all support a single standard: public officials or other persons act "in an official capacity" when they act "under color of law." As explained by the Supreme Court in another context, acts are performed "under the color of law" when the actor misuses power possessed by virtue of law and made possible only because the actor was clothed with the authority of law. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (defining "color of law" in the context of 42 U.S.C. § 1983).

Courts have long understood the phrases "in an official capacity" and "under color of law" as alternative and overlapping ways of expressing the concept of state action. Over a decade before the issuance of the CAT's implementing regulations, the Supreme Court acknowledged the connection between the two formulations, holding that a public employee generally "acts under color of state law while acting in his official capacity." *West v. Atkins*, 487 U.S. 42, 50 (1988) (construing 42 U.S.C. § 1983); *see also Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (describing the "key determinant" of an under color of law inquiry as "whether the actor, at the time in question, purposes to act in an official capacity"). The implementing regulations under the CAT are best construed in light of that judicial understanding about how these terms are used in the law. *Cf. Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (explaining that Congress's use of a phrase with a "settled" judicial interpretation in a new statute generally implies an intent to incorporate the settled interpretation).

A statement in the CAT's ratification history bolsters the presumption created by that judicial backdrop. When the President transmitted the treaty to the Senate, the accompanying Department of State report made clear the Executive Branch's understanding that the "in an official capacity" and "under color of law" formulations were interchangeable: "[I]n terms more familiar in U.S. law," the Department of State explained, the treaty "applies to torture inflicted 'under color of law.'" Message from the President of the United States Transmitting the Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment, S. Treaty Doc. No. 100-20, at 4 (1988). And there is no indication the Department of Justice departed from that understanding in promulgating the CAT's implementing regulations, which parrot the Convention's text in confining its scope to torture inflicted by persons "acting in an official capacity." *Compare* 8 C.F.R. § 1208.18(a)(1) *with* CAT art. 1; *see* 8 U.S.C. § 1231 note (directing "the heads of the appropriate agencies" to "prescribe regulations to implement the obligations of the United States" under the CAT). Citing the

State Department's report, the courts of appeals have therefore held that "in an official capacity" under 8 C.F.R. § 1208.18(a)(1) bears the same meaning as "under color of" law under 42 U.S.C. § 1983. *See, e.g.*, *Ramirez-Peyro*, 574 F.3d at 900.

Congress also apparently understood those phrases as equivalent alternatives, when it implemented the CAT's directive to "ensure that all acts of torture are offences under [domestic] criminal law." CAT art. 4. The criminal statute that executes the CAT defines "torture" to include only those acts "committed by a person acting *under the color of law*." 18 U.S.C. §2340(1) (emphasis added). As the Eleventh Circuit has said in construing that provision, "[t]here is no material difference between [the under color of law] notion of official conduct and that imparted by the phrase 'in an official capacity.'" *Belfast*, 611 F.3d at 809. In light of all these factors, I agree and now reaffirm *Matter of Y-L-*'s holding that "in an official capacity" means "under color of law."

This standard does not categorically exclude corrupt, low-level officials from the CAT's scope. Rather, regardless of rank, a public official acts under color of law when he "exercise[s] power 'possessed by virtue of . . . law and made possible only because [he] is clothed with the authority of . . . law.'" *See, e.g.*, *Atkins*, 487 U.S. at 49 (describing the "traditional definition of acting under color of state law") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Whether any particular official's actions ultimately satisfy this standard is a fact-intensive inquiry that depends on whether the official's conduct is "fairly attributable to the State." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Certain statements in *Matter of Y-L-* might be read to support the alternative, "rogue official" formulation. But I do not understand *Matter of Y-L-* to endorse a freestanding test that excludes from the CAT's scope the "extrajudicial acts" of "corrupt, low-level" agents who personally inflict torture. *Matter of Y-L-* twice stated that the Convention applies to torture inflicted "under color of law." 23 I&N Dec. at 279, 285. And it discussed a "rogue official" formulation only in applying the "under color of law" standard to the particular facts presented in that case. With respect to one of the respondents, the Attorney General stated that "evidence of isolated rogue agents engaging in extrajudicial acts of brutality, which are not only in contravention of the jurisdiction's laws and policies but are committed despite authorities' best efforts to root out such misconduct," was insufficient to establish a claim for CAT protection. *Id.* at 283. And with respect to a second respondent, the Attorney General similarly concluded that evidence that "two corrupt, low-level agents may seek to exact personal vengeance on him for personal reasons" was insufficient to establish a claim for CAT protection. *Id.* at 285. Because these conclusions describe acts of private

violence by persons who merely happened to be government officials, they are consistent with the "under color of law" test. I do not believe that they establish any other standard—such as the "rogue official" test—for determining whether a public official or other person is acting "in an official capacity," and I do not afford any special significance to *Matter of Y-L-*'s descriptions of the officials there as "isolated," "corrupt," or "low-level."

As the Board correctly explained in its decision below, action "under color of law" often involves *misuse* of authority. *See Matter of O-F-A-S-*, 27 I&N Dec. at 715 ("An act that is motivated by personal objectives is under color of law when an official uses his official authority to fulfill his personal objectives."). Thus, an act's very character as "extra-judicial"—that it is an unlawful use of a power conferred by law—is what can make it "under color of law." And the "under color of law" test draws no distinction between low-level and high-level officials. *See, e.g.*, *Ramirez-Peyro*, 574 F.3d at 901 ("[I]t is not contrary to . . . the under-color-of-law standard to hold Mexico responsible for the acts of its officials, including low-level ones[.]"). It is misuse of authority, "'made possible only because the wrongdoer is clothed with the authority'" of law, that may violate the CAT regulations. *Atkins*, 487 U.S. at 49 (quoting *Classic*, 313 U.S. at 326); *see also Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (noting that "[t]he dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual") (quoting *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995)). By immunizing extrajudicial action by low-level officials from the CAT's scope, a freestanding "rogue official" rule would appear to disqualify much of what the "under color of law" rule might otherwise qualify as "torture."

In its decision, the Board also suggested that there may be a legal distinction between low- and high-level officials. The Board stated that "the higher a position in law enforcement that a person holds, the more likely his conduct will be under color of law," because higher-level officers may abuse authority "without adverse consequences" more easily than line police officers. *Matter of O-F-A-S-*, 27 I&N Dec. at 716–17. Although I recognize that the Board may have been seeking to reconcile all of the language in the Attorney General's decision in *Matter of Y-L-*, I do not think that any distinction between low- and high- level officials can be maintained as part of the "under color of law" inquiry. "[E]vidence that the government prosecutes" corrupt law enforcement officers may be relevant to determining whether some high-level official has *acquiesced* in torture, *Garcia*, 756 F.3d at 892–93, but it makes no difference when determining whether a law enforcement officer has *himself* inflicted, instigated, consented to,

or acquiesced in torture under color of law.[2] *Id.* When police officers inflict torture, "[i]t is irrelevant whether the police were rogue (in the sense of not serving the interests of the [entire] government) or not." *See Rodriguez-Molinero*, 808 F.3d at 1139. The relevant question is whether they acted under color of law—whether they misused power possessed by virtue of law, made possible only because clothed with the authority of law.

Neither *Matter of Y-L-*, the Board's decision below, nor any other Board precedent should be read to endorse any inquiry distinct from the "under color of law" standard. For the reasons discussed above, I vacate the Board's decision and remand this case for review by a three-member panel in accordance with this opinion.

---

[2]  The question whether one public official has acquiesced in an act of torture is distinct from whether *another* has inflicted torture under color of law, and I do not in this opinion address the standard governing acquiescence. I hold only that a single standard applies when determining whether a person has acted "in an official capacity": the "under color of law" standard, which, it bears repeating, demands a fact-intensive inquiry for determining whether any particular person's conduct is "fairly attributable to the State." *Atkins*, 487 U.S. at 49 (quoting *Edmondson Oil*, 457 U.S. at 937).