**REVISED March 24, 2017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2017

Lyle W. Cayce
Clerk

No. 15-60532

JOSE IRUEGAS-VALDEZ, also known as Jose Iruegas,

Petitioner

v.

SALLY Q. YATES, ACTING U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Jose Iruegas-Valdez ("Iruegas-Valdez") appeals the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") denial of his application for withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons below, we VACATE the decision of the BIA and REMAND with instructions to apply the appropriate legal standards.

## I

In 1975, one-year-old Iruegas-Valdez, a Mexican national, entered the United States with his parents as a lawful permanent resident. In 1997, he was convicted of possession of a controlled substance and removed from the United States. He remained in Mexico for only two days before re-entering the country illegally. Ten years later, he was again removed after being convicted of aggravated assault with a deadly weapon and serving three years imprisonment.

Iruegas-Valdez again re-entered the United States illegally but was quickly apprehended by the Department of Homeland Security ("DHS"). He was convicted of being unlawfully present in the United States and, after completing his sentence, was returned to DHS for removal procedures. He claimed asylum and requested a reasonable fear interview. The asylum officer conducting the interview found Iruegas-Valdez to be "credible" and to have a reasonable fear of persecution in his home country. The case was then referred to an IJ for determination.

At the hearing, Iruegas-Valdez testified that he is afraid to return to Mexico because two of his cousins, Jose Luis Garza and Hector Moreno, betrayed a drug cartel known as the Zetas. Garza is related to Iruegas-Valdez through his father, Garza's uncle having married Iruegas-Valdez's first cousin, Alma Perez Iruegas. Moreno is Iruegas-Valdez's second cousin on his mother's side. Both Garza and Moreno had been high-ranking members of the Zetas before they fled to the United States with five million dollars in cash and some of the Zetas' ledger books and became informants for the Drug Enforcement Administration in 2011. Iruegas-Valdez claimed that the cartel retaliated by massacring members of Garza and Moreno's family: "The Zetas . . . sent 50 trunks [sic] of people to in [sic] the Coahuila, where I was born. They went to

town, and they picked up a lot of my family members." He testified that at least ten of his close family members were killed, including his first cousin Arnoldo Perez Iruegas Velasco, who was beheaded, and Arnoldo's wife who was eight months pregnant at the time. Iruegas-Valdez claims that at least 200 people associated with Garza's and Moreno's households were executed and that the cartel continues to "look for individuals, family members, as we speak." Iruegas-Valdez also claimed that local police participated in the massacre.

Iruegas-Valdez provided the IJ with numerous newspaper articles that describe the attacks and specifically list some of his family members among the deceased. Iruegas-Valdez's mother, Maria Teresa Alonso Valdez ("Maria Alonso"), also testified at the hearing, and the IJ found her to be credible.

The IJ held that Iruegas-Valdez was statutorily barred from seeking asylum because he had previously been convicted of an aggravated felony. But the IJ found that Iruegas-Valdez was still "eligible to apply for withholding of removal" because "the nature of the offense, the length of the sentence imposed . . . , and the circumstances under which this particular crime occurred does not support a finding that [Iruegas-Valdez] was convicted of a particularly serious crime."

The IJ then denied Iruegas-Valdez's application for withholding of removal "[p]rimarily" because "the Respondent failed to testify credibility [sic]." The IJ also denied Iruegas-Valdez's application for withholding of removal under CAT.

On appeal, the BIA affirmed the IJ's decision, specifically holding that Iruegas-Valdez had "not established that [the IJ's] adverse credibility determination [was] clearly erroneous." The BIA did not consider whether the additional evidence proffered by Iruegas-Valdez was enough to satisfy his burden of proof independent from his testimony, holding instead that *because*

3

"the applicant's testimony is not credible, he has failed to satisfy his burden of proof for withholding of removal." Iruegas-Valdez timely appealed.

## II

We have "authority to review only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).

On a petition for review of an order of the BIA, we review factual findings "to determine if they are supported by substantial evidence in the record." *Id.* (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). "Under substantial evidence review, we may not reverse the BIA's factual determinations unless we find not only that the evidence supports a contrary conclusion, but that the evidence *compels* it. In other words, the alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it." *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam) (citations omitted). The BIA's legal determinations are reviewed de novo. *Kompany v. Gonzales*, 236 F. App'x 33, 37 (5th Cir. 2007) (per curiam).

## III

As an initial matter, "8 U.S.C. § 1252(a)(2)(C) limits our jurisdiction to review final removal orders against aliens who are removable by reason of having committed certain criminal offenses," including aggravated felonies. *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 787 (5th Cir. 2016); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii). Because Iruegas-Valdez concedes that he is an aggravated felon, we lack jurisdiction over his challenge to the BIA's denial of his application for withholding of removal and CAT relief, except to the extent he raises legal or constitutional questions. *See* 8 U.S.C. § 1252(a)(2)(D). Accordingly, we have no authority to consider Iruegas-Valdez's argument that

the BIA lacked substantial evidence to support its conclusion that his testimony was not credible.

By contrast, we have jurisdiction to review legal questions, including whether the Board applied an inappropriate standard or failed to make necessary findings. Iruegas-Valdez contends that the Board failed to address whether, even without testimony, the record evidence demonstrates that he is more likely than not to be persecuted on account of his membership in a particular social group. He also contends that the Board failed to address whether, regardless of government acquiescence, active participation by public officials acting under color of law supports his eligibility for protection from torture.

## A

Congress has forbidden the Attorney General from removing an alien otherwise subject to deportation "to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien carries the burden of proof in these proceedings. *Id.* § 1231(b)(3)(C). Here, Iruegas-Valdez argues that he has satisfied that burden of proof.

The government contends that Iruegas-Valdez's argument that—even ignoring the applicant's own testimony—he has established "that it is more likely than not that he will be persecuted on account of his membership in a social group consisting of 'family of Hector Moreno and Jose Luis Garza,' is not properly before this Court." We agree. The BIA based its denial of the applicant's petition for withholding of removal solely on the IJ's credibility determination: it did not consider the testimony of Maria Alonso or the newspaper articles submitted to the IJ. As such, it did not decide whether

"family members of Moreno and Garza" constitute a particular social group or whether Iruegas-Valdez's fear of persecution is "on account of" his membership in that particular social group. On the contrary, the BIA explicitly held that "[g]iven the Immigration Judge's adverse credibility finding, [it] need not address the respondent's challenge to the Immigration Judge's determination that the other proposed particular social group, family members of [Moreno and Garza], is not valid."

The Supreme Court addressed an almost identical situation in *INS v. Orlando Ventura*, 537 U.S. 12 (2002) (per curiam). In that case, the BIA "determined that respondent Fredy Orlando Ventura failed to qualify for . . . statutory protection because any persecution that he faced when he left Guatemala . . . was not 'on account of' a 'political opinion.'" *Id.* at 13 (emphases omitted). The Ninth Circuit reversed but "went on to consider an alternative argument that the Government had made before the Immigration Judge" but which had not been considered by the BIA itself. *Id.*

The Supreme Court determined that this was a violation of "well-established principles of administrative law." *Id.* at 16. A "'judicial judgment cannot be made to do service for an administrative judgment.' Nor can an 'appellate court . . . intrude upon the domain which Congress has exclusively entrusted to an administrative agency.'" *Id.* (alteration in original) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). As such, "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Id.*

Here, as in *Ventura*, the BIA specifically refused to consider an alternative argument that had been raised before the IJ—namely that the evidence external to Iruegas-Valdez's testimony established that removal to Mexico would put his life in jeopardy because he was a family member of

Moreno and Garza. Congress has explicitly delegated such determinations to the Attorney General, not the courts. 8 U.S.C. § 1231(b)(3)(A). It would therefore be a violation of "well-established principles of administrative law" for us to reach this issue. *Ventura*, 537 U.S. at 16.

**B**

We likewise decline to consider whether Iruegas-Valdez is eligible for relief under CAT because the BIA failed to apply the appropriate legal standard. An applicant for withholding of removal under CAT bears the burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture" includes "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him . . . for an act he . . . or a third person has committed or is suspected of having committed, or intimidating or coercing him . . . or a third person." *Id.* § 1208.18(a)(1). It includes "intentional infliction or threatened infliction of severe physical pain or suffering," as well as "threat[s] of imminent death." *Id.* § 1208.18(a)(4).

To qualify under CAT, the pain or suffering in question must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). A public official acquiesces to torture when he or she has prior "awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). An applicant may satisfy his burden of proving acquiescence by demonstrating "a government's willful blindness of torturous activity." *Hakim v. Holder,* 628 F.3d 151, 155 (5th Cir. 2010) (citing *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir. 2002)).

"Thus relief under the [CAT] requires a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture." *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014) (citing *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350-51 (5th Cir. 2006)).

Failing to clearly bifurcate its CAT analysis, the BIA focused primarily on the second prong, concluding that the applicant's evidence did not prove that the *government* would torture him: "while corruption and increased levels of gang criminality exists [in Mexico], the government is actively fighting the drug cartels." In reaching this conclusion, the BIA seemed to adopt the analysis of the IJ who listed various steps the government had taken since the Allende massacre to stamp out the Zetas and their government lackeys: increasing the number of federal troops, dismissing the entire municipal police force, and arresting two local police officers for their alleged involvement in the attack. The IJ then concluded that "[t]hese kinds of actions do not indicate that the Mexican government has simply looked the other way and willfully permitted the Zetas to act with impunity."

But "willful blindness" is not the only way to prove sufficient state action. The regulations specifically list a number of different avenues which the BIA failed to consider: torture occurs whenever severe physical or mental pain is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "[G]overnment acquiescence need not necessarily be an officially sanctioned state action; instead, an act is under color of law when it constitutes a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Garcia*, 756 F.3d at 891-92. "[A]cts motivated by an officer's personal objectives are 'under

8

color of law' when the officer uses his official capacity to further those objectives." *Id.* at 892 (citing *Marmorato v. Holder*, 376 F. App'x 380, 385 (5th Cir. 2010) (per curiam)). Nor does our precedent require that the public official in question "be the nation's president or some other official at the upper echelons of power. Rather . . . the use of official authority by low-level officials, such a[s] police officers, can work to place actions under the color of law even where they are without state sanction." *Id.* (alterations in original) (quoting *Ramirez-Peyro v. Holder*, 574 F.3d 893, 901 (8th Cir. 2009)).

Iruegas-Valdez has provided evidence that police officers were active participants in the Allende massacre. He also provided evidence that the governor of Coahuila, Humberto Moreira, was a close ally of the Zetas and specifically allowed the attack. But neither the IJ nor the BIA considered whether this evidence established that the applicant was more likely than not to be tortured "by" or with the "consent of" government officials. This constituted "error regarding what [Iruegas-Valdez] was required to show to obtain CAT protection." *Id.* at 893. Thus, we will "vacate the BIA's decision and remand for the agency to properly consider this evidence under the under color of law legal standard." *Id.*

## IV

In conclusion, we lack jurisdiction to review the BIA's credibility determination. With respect to the remaining issues, we VACATE the decision of the BIA and REMAND for consideration pursuant to the appropriate legal standards as detailed above.