# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2022

Lyle W. Cayce
Clerk

No. 21-60033

Ariana Reyes Martinez; Diego F. Suarez Reyes,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency Nos. A206 912 298, A206 912 299

Before Higginbotham, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Petitioners Ariana Reyes Martinez and her minor child Diego F. Suarez Reyes (collectively, "Reyes Martinez"), natives and citizens of Mexico, petition for review of the Board of Immigration Appeals' ("BIA") dismissal of their appeal. That appeal challenged an Immigration Judge's ("IJ") denial of Reyes Martinez's application for asylum and withholding of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60033

removal under the Immigration and Nationality Act and the Convention Against Torture ("CAT"). We deny the petition.

I.

Reyes Martinez entered the United States on or about October 17, 2014. On October 31, 2014, the Department of Homeland Security ("DHS") served Reyes Martinez with a Notice to Appear, charging her with being inadmissible to and removable from the United States. Appearing before an IJ on November 12, 2014, Reyes Martinez admitted to the facts supporting removability. However, she requested asylum and withholding of removal, citing (1) her membership in a particular social group and (2) CAT.[1]

In support of these requests, Reyes Martinez asserted that, while in Mexico, she received several phone calls from members of an armed gang. In one call, the gang members threatened to kill her or her son if she did not pay them 70,000 pesos. Eventually, after receiving a note threatening her if she did not pay, Reyes Martinez decided to leave Mexico. She did not believe she could go to another part of the country because she would have no family support and did not think the police would protect her. The night that Reyes Martinez planned to leave, she discovered that the phone line to her in-laws' home was dead and that the electricity was cut off to their home. Reyes Martinez ran to a neighbor's house and, once inside, saw men with flashlights looking into her in-laws' home.

According to Reyes Martinez, the gang members had demanded money from her because they knew her husband was sending her money from the United States. She asserted that women were vulnerable in Mexico and

---

[1] Although Reyes Martinez and her son initially filed separate applications, counsel stated at the merits hearing that her son's claims were "derivative" of his mother's. We therefore treat their claims together, as did the IJ and BIA.

that gang members discriminate against them more readily. She also claimed fear of going to the police, citing stories of others killed by gang members or corrupt police officers, as well as the fact that her father-in-law, a government official, advised her not to report the threats. Moreover, if she returned to Mexico, she feared the gangs would kill her and harm her children because she had refused to comply with their demands. She cited the fact that her mother-in-law saw a truck outside, watching their home, after Reyes Martinez had left the country—surveillance that apparently stopped when the drivers realized Reyes Martinez was no longer living there. At the same time, Reyes Martinez conceded that nobody living with her had been physically harmed and that she had never been threatened face-to-face.

Although finding Reyes Martinez credible, the IJ concluded she was not entitled to relief on any ground. The instances of intimidation did not, in the IJ's view, rise to the level of harm requisite for persecution. But even if they did, the IJ found that Reyes Martinez would not have been persecuted as a member of a particular social group ("PSG"). *See* 8 U.S.C. 1231(b)(3)(A). Reyes Martinez argued that she belonged to two groups qualifying as PSGs: (1) mothers in Mexico with young children who have refused and do not comply with cartel extortion demands and (2) female homemakers in Mexico with young children who do not comply with cartel extortion demands. The IJ found neither proposed group was a valid PSG because they were not particular or readily identifiable as a group in society.

The IJ also determined that Reyes Martinez was not entitled to relief under CAT. While sympathizing with her plight, the IJ nevertheless found that the harm did not rise to the high level of extreme, cruel, and inhuman treatment needed to constitute torture. Combined with insufficient evidence that the harms were the result of the Mexican government's instigation or acquiescence, the IJ found that Reyes Martinez failed to show it was more likely than not that she would be tortured if returned to Mexico.

No. 21-60033

Upholding the IJ's rulings, the BIA agreed that Reyes Martinez's proposed social groups were not valid PSGs. And in any event, no nexus was shown between Reyes Martinez's harms and her proposed groups—rather, the IJ had found she was targeted for economic gain. The BIA also agreed no CAT claim was proven because the harms alleged did not rise to the level of torture, nor did they arise from the Mexican government's acquiescence.

Reyes Martinez now appeals the BIA's decision.

## II.

We conduct a *de novo* review of the BIA's conclusions of law. *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019). If such "a conclusion embodies the [BIA's] interpretation of an ambiguous provision of a statute that it administers," our review is deferential. *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). We review fact findings for substantial evidence. The agency need not "address evidentiary minutiae or write any lengthy exegesis" as long as its opinion reflects "meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996). Therefore, we will not disturb the factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252 (b)(4)(B); *see also Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019).

## III.

Reyes Martinez argues that the BIA erred in rejecting her PSG and CAT claims. We address each claim in turn.

## A.

We begin with Reyes Martinez's claim based on her proposed PSGs. The term "particular social group" is not defined by statute or regulations.

4

Instead, the BIA has interpreted the term as containing three criteria. A PSG must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I.& N. Dec. 227, 237 (BIA 2014).

Reyes Martinez contends the BIA erred in concluding her proposed PSGs were invalid under these criteria. She argues the groups are based on her immutable characteristic as a female and a mother; sufficiently particular because they are defined by factors such as nationality and failure to comply with gang demands; and socially distinct in light of the widely held attitudes of *machismo* that pervade Mexican society and thus encourage gang members to target women. Reyes Martinez also rejects the idea that her proposed groups are defined exclusively by reference to harm, arguing they were based on her *resistance* to extortion and not the mere fact that she *suffered* extortion.

We disagree. Reyes Martinez has not shown that the record compels a conclusion that she has presented a valid PSG. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992). As the BIA found, a PSG must be particular and readily identifiable as a group in society. *See Orellana-Monson v. Holder*, 685 F.3d 511, 519 (5th Cir. 2012). But Reyes Martinez's proposed groups— "mothers" and "female homemakers"—are substantially overbroad. *See M-E-V-G-*, 26 I. & N. Dec. at 239 (describing particularity as meaning that a group "must not be amorphous, overbroad, diffuse, or subjective" (citing *Ochoa v. Gonzales*, 406 F.3d 1166, 1170–71 (9th Cir. 2005))). Moreover, the one factor that distinguishes the groups—denying cartel demands—defines them by reference to the harm they suffer, rendering them impermissibly circular. *See Orellana-Monson*, 685 F.3d at 518–19 ("The risk of persecution alone does not create a [PSG] and the term should not be a catch all for all persons alleging persecution who do not fit elsewhere." (cleaned up)). Finally, we have consistently held that an antagonistic relationship with

gangs is not a basis for establishing a PSG. *See id.* at 521–22 (holding Salvadoran boys who refused gang membership were not substantially different from others who had opposed a gang); *see also Morales-Duran v. Barr*, 770 F. App'x 200, 201 (5th Cir. 2019) (unpublished) (per curiam) (upholding BIA's finding that proposed PSG of "unprotected women receiving threats from gangs who flee the country of El Salvador due to the danger to themselves and their children" was impermissibly defined by the harm suffered and that a second PSG of "unprotected women who are targeted by gangs" lacked particularity and social visibility).

Because the evidence does not compel a conclusion contrary to the BIA's decision, we decline to disturb it. *See Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009).[2]

### B.

We turn to Reyes Martinez's CAT claim. To be eligible for CAT relief, she must show: "(1) 'it [is] more likely than not that [she] will be tortured upon return to [her] homeland'; and (2) 'sufficient state action involved in that torture.'" *Tabora Gutierrez v. Garland*, 12 F.4th 496, 503 (5th Cir. 2021) (quoting *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017)); *see* 8 C.F.R. § 1208.16(c)(2). "Torture" refers to the intentional infliction of severe physical or mental pain and suffering. 8 C.F.R. § 1208.18(a)(1). It includes "prolonged mental harm caused by or resulting from . . . [t]he threat of imminent death." *Id.* § 1208.18(a)(4)(iii).

---

[2] Having found Reyes Martinez ineligible for asylum on this basis, we do not address her other asylum-related arguments concerning nexus to harm, internal relocation, or the government's ability or willingness to assist. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 228-29 (5th Cir. 2019). Moreover, because Reyes Martinez is ineligible for asylum, she cannot meet the higher standard for withholding of removal. *See Munoz-Granados v. Barr*, 958 F.3d 402, 408 (5th Cir. 2020).

Importantly, "the pain or suffering must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity.'" *Tabora Gutierrez*, 12 F.4th at 502 (quoting 8 C.F.R. § 1208.18(a)(1)). Officials "acquiesce" when they, "prior to the activity constituting torture, have awareness of such activity and thereafter breach [their] legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). This "awareness requires a finding of either actual knowledge or willful blindness." *Id.*

Reyes Martinez contends the IJ and BIA committed numerous legal errors, necessitating remand. First, she argues the IJ and BIA erred by misinterpreting the definition of torture as not encompassing mental pain and suffering, contrary to the regulation. *See id.* § 1208.18(a)(1). We disagree. The IJ's assessment did not reflect this misunderstanding of torture. The judge's opinion referred to "the harm that [Reyes Martinez] described" and concluded that harm did "not rise to the level of extreme, cruel and inhuman treatment within the meaning of torture." Nothing about the references to Reyes Martinez's "harm" suggests the IJ limited its analysis only to *physical* harm.

Second, Reyes Martinez argues the IJ improperly assessed the likelihood of future torture only by evidence of past torture. *See id.* § 1208.16 (outlining relevant evidence to be considered). We disagree. The IJ stated that it had considered all evidence in its entirety, even if not specifically mentioned in its decision. While we have previously remanded a CAT claim when the agency refused to consider relevant evidence altogether, *see Arulnathy v. Garland*, 17 F.4th 586, 599 (5th Cir. 2021), here the IJ stated that it considered all the evidence. As noted, we do not require the agency to "address evidentiary minutiae or write any lengthy exegesis." *Abdel-Masieh*, 73 F.3d at 585. And, in any event, the IJ noted that the CAT standard is not satisfied by the mere fact that government officials may fail to prevent

criminal activities. *See Chen v. Gonzales*, 470 F.3d 1131, 1142–43 (5th Cir. 2006); *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006). The IJ also observed that, to prove government acquiescence, it is not enough to show violence by non-governmental actors coupled with speculation that officials might not prevent the violence. These statements, combined with the IJ's statement that it considered all evidence, do not suggest the IJ improperly limited its consideration of relevant evidence.

Reyes Martinez next argues that the evidence *compels* a conclusion of officially sanctioned torture. We again disagree. The evidence shows that gang members extorted and threatened Reyes Martinez and that she did not seek official help. But this evidence does not compel the conclusion that Reyes Martinez was subjected to government sanctioned torture; instead, it shows she was a crime victim. She also points to evidence that her father-in-law, a government official, advised her not to report the threats and extortion to the police. But the evidence does not show that her father-in-law was acting in his official capacity when he made that recommendation, which is a requirement of instigation or acquiescence. *See* 8 C.F.R. § 1208.18(a)(1).

Reyes Martinez's other evidence also does not compel the conclusion of torture with government acquiescence. Via her testimony and credible fear interview, she noted examples of individuals in her community who were murdered by gang members or police. She also presented documentary evidence of police and government corruption and collaboration with gang members. But this evidence does not establish the necessary tie between the harms she experienced and government acquiescence or instigation. As the IJ observed, Reyes Martinez "d[id] not allege that the national government is persecuting [those individuals]." Furthermore, Reyes Martinez did not report any of her gang-related problems to the authorities. *See Garcia-Meza v. Holder*, 448 F. App'x 448, 450 (5th Cir. 2011) (unpublished) (per curiam) (finding alien's unreported rape did not support conclusion alien would be

tortured with the acquiescence of the Honduran government). And, to the extent she argues that country conditions documents proved official acquiescence to torture, such evidence does not compel a conclusion of torture where it does not specifically address the alien's individual circumstances. *See Morales v. Sessions*, 860 F.3d 812, 818 (5th Cir. 2017) (concluding reports about the dangers in El Salvador for women and children "are too general to warrant" CAT relief). And, in any event, such reports do not corroborate the idea that the government of Mexico is utterly corrupt and would therefore acquiesce in her torture. For example, the 2016 Human Right Report on which the IJ relied shows efforts by Mexican authorities to investigate and prosecute allegations of forced disappearances and torture, including torture against women.

In sum, the evidence Reyes Martinez points to does not compel a conclusion that the government will acquiesce in her torture. Accordingly, we will not disturb the IJ's and BIA's rejection of her CAT claim.

* * *

The petition for review is DENIED.