# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2022

Lyle W. Cayce
Clerk

No. 21-60574

Oscar Aguado-Cuevas,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A088 772 838

Before King, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:*

Oscar Aguado-Cuevas, a Mexican national, petitions for review of the BIA's decision affirming a denial of his application for relief under the Convention Against Torture. For the reasons below, we GRANT the petition, VACATE the BIA's decision, and REMAND this case for further consideration of Aguado-Cuevas's petition for CAT protection.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60574

## I.

Oscar Aguado-Cuevas, a Mexican national, first entered the U.S. without inspection in 1996. In 2010, he was found removable. In June 2011, he was removed to Mexico after filing an unsuccessful motion to reopen his removal order. In 2012, Aguado-Cuevas reentered the U.S. without inspection. In May 2020, the Department of Homeland Security initiated proceedings to reinstate Aguado-Cuevas's 2010 removal order. An Immigration Judge ("IJ") placed Aguado-Cuevas in withholding proceedings after finding that Aguado-Cuevas had established a reasonable fear of torture in Mexico. Aguado-Cuevas filed an application for relief under the Convention Against Torture ("CAT"), arguing that his uncles and cousins in Mexico were cartel members who would kill him if he returned. In September 2020, Aguado-Cuevas, his father, and an expert witness testified in support of Aguado-Cuevas's CAT application.

Aguado-Cuevas testified to the following facts. In 2012, Aguado-Cuevas and his cousin Adolfo Robles Valdez ("Adolfo Jr.") were in the Mexican state of Jalisco when they noticed a group of "marines, uniformed men" entering the home of another cousin ("El Perro") after El Perro had been "arrogant" and "talking about the cartel." El Perro was never seen again. Adolfo Jr.'s father ("Adolfo Sr."), who was "like the mayor of the township in the area," had organized the Jalisco New Generation Cartel ("CJNG" or the "Cartel") to disappear people like El Perro, sometimes for money. Adolfo Sr. and his uncle, Martin Famania, a Mexican Immigration Services employee, were involved in such disappearances. Aguado-Cuevas also linked another cousin's disappearance to Adolfo Sr.

By May 2017, Aguado-Cuevas was back in the U.S. and had begun working with Adolfo Jr. to traffic cocaine for CJNG. During one of these dealings, Aguado-Cuevas and Adolfo Jr. failed to complete a transaction and

were unable to recover a $120,000 payment owed to CJNG, leading CJNG to hold Aguado-Cuevas responsible for the debt.

Aguado-Cuevas was arrested on February 13, 2018. He was charged with cocaine possession with intent to deliver.[1] On February 28, 2019, Aguado-Cuevas signed a cooperation agreement and began cooperating with federal authorities. Aguado-Cuevas's cooperation, including his agreement to testify against Adolfo Jr. and CJNG, was leaked to the media and publicized online. Aguado-Cuevas testified that Adolfo Jr. was aware of these happenings. Aguado-Cuevas further testified that Adolfo Jr. "wanted to get rid of witnesses" and sent a subsequent text message to a cocaine dealer stating that Adolfo Jr. was "going to kill [Aguado-Cuevas]."

The CAT application hearing contained other relevant testimony. Aguado-Cuevas's father testified that the cartel in Mexico acts "with total impunity" and that Aguado-Cuevas was in danger due to his cooperation with law enforcement. He also testified that his Wisconsin residence, where Aguado-Cuevas had been staying, was ransacked in January 2018. Finally, he testified that in June 2020, a group of Cartel members approached Aguado-Cuevas's aunt and uncle in Mexico. The members said that they were "gathering information on [Aguado-Cuevas's] whereabouts" and, presumably referencing the $120,000 from the failed transaction, that Aguado-Cuevas "owed a lot of money."

Additionally, an expert witness testified that Aguado-Cuevas's chances of potential risk or torture upon returning to Mexico were "[e]xtremely high to [a] near certainty" due to his informant and debtor status. The expert witness further testified that CJNG routinely kills

---

[1] Aguado-Cuevas pleaded guilty to these charges and was sentenced in state court. He later pleaded guilty in federal court to reentry and possession of a firearm.

informants and debtors and that they have a "high level of interpenetration of the state."

At the conclusion of the CAT application hearing, the IJ found Aguado-Cuevas credible but denied him CAT relief. The IJ noted that Aguado-Cuevas had only established two possible instances of past torture where he was not involved (the two disappearances), and that these instances, together with the conversation between CJNG members and Aguado-Cuevas's aunt and the Mexican government's occasional failures to combat cartels, were insufficient to find the required likelihood of future torture. Additionally, the IJ stated that Aguado-Cuevas had not shown the necessary level of state involvement and, assuming *arguendo* that Adolfo Sr. was a state actor, that there was no evidence that he had or would torture Aguado-Cuevas. Aguado-Cuevas appealed this decision to the Board of Immigration Appeals ("BIA").

In a one-judge decision, the BIA affirmed the IJ's decision and dismissed Aguado-Cuevas's appeal. The BIA held that the IJ had not clearly erred in assessing the evidence comprising Aguado-Cuevas's claim for CAT relief. It stated that the testimony regarding the two disappearances and the Cartel's questioning of Aguado-Cuevas's aunt concerning Aguado-Cuevas's whereabouts did not establish either past, or a likelihood of future, torture. The BIA, though acknowledging Aguado-Cuevas's and the expert witness's testimony showing CJNG's tendency to kill informants and debtors, confirmed that an IJ does not need to accept a witness's testimony as fact.

These doubts concerning likelihood of torture notwithstanding, the BIA assumed *arguendo* that Aguado-Cuevas was likely to suffer future torture but nonetheless affirmed the IJ's decision based on Aguado-Cuevas's inability to establish the necessary degree of state action. Aguado-Cuevas timely appeals.

## II.

This court considers the BIA's decision and the IJ's decision to the extent that it influenced the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593–94 (5th Cir. 2007). We review findings of fact pertaining to the denial of a CAT application for substantial evidence; accordingly, Aguado-Cuevas must meet "the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). "By contrast, this court reviews the BIA's legal determinations de novo, including whether the [BIA] applied an inappropriate standard or failed to make necessary findings." *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (internal quotations omitted). "If this court determines that the BIA applied an inappropriate standard or neglected necessary findings, the court will vacate the decision and remand to the BIA." *Id.*

CAT relief has two requirements. First, Aguado-Cuevas must show that it is "more likely than not that [he] will be tortured upon return to his homeland." *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014); *see* 8 C.F.R. §§ 208.16(c)(2), 1208.16(c)(2). Second, Aguado-Cuevas must also show that said torture will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity." 8 C.F.R. §§ 208.18(a)(1), 1208.18(a)(1); *see Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017). We refer to these as the "likelihood of torture" and "state involvement" prongs, respectively.

### A. State involvement

We begin with the state involvement prong because the IJ and the BIA based their decisions on this prong. Aguado-Cuevas can show state involvement in any purported torture in one of two ways. First, he can demonstrate that the government consents, acquiesces, or willfully turns a

blind eye to the torture. *Iruegas-Valdez*, 846 F.3d at 812. Second, absent state sanction, Aguado-Cuevas can show that the torturous acts are committed "under color of law," *i.e.*, when a corrupt official abuses power while clothed with the state's authority. *Id.* at 812–13 (internal quotations omitted).

> Although this court will only reverse the BIA's decision if the evidence is such that a reasonable factfinder would have to conclude that the applicant qualifies for relief, this court [n]evertheless . . . review[s] the BIA's decision procedurally to ensure that the complaining alien has received full and fair consideration of all circumstances that give rise to his or her claims.

*Ghotra*, 912 F.3d at 290 (internal quotations omitted). An applicant receives full and fair consideration when the BIA "consider[s] the issues raised . . . and announce[s] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," although "[t]he [BIA] does not have to write an exegesis on every contention." *See Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002) (internal quotations omitted).

The BIA affirmed the IJ's determination that Aguado-Cuevas had not presented sufficient evidence of the necessary state action in relevant part because Aguado-Cuevas's testimony that Alfonso Sr. acted "like the mayor" was insufficient to establish that Alfonso Sr. had authority, did not show that Alfonso Sr. was in fact a state official, and thus could not show that Alfonso Sr. was acting under color of law in having marines pick up Aguado-Cuevas's cousin.[2]

---

[2] The BIA also noted "insufficient evidence that the general statements that were made to the applicant's aunt and her husband suggest threats that could be interpreted as

But the BIA does not adequately discuss an important piece of evidence: Aguado-Cuevas's testimony concerning Martin Famania, Adolfo Sr.'s uncle employed as a Mexican immigration authority who worked with Alfonso Sr. Separately from Alfonso Sr.'s actions, Famania's involvement in disappearances may independently constitute state involvement under color of law; "the use of official authority by low-level officials, such a[s] police officers, can work to place actions under the color of law even where they are without state sanction." *Garcia*, 756 F.3d at 892 (alteration in original) (quoting *Ramirez–Peyro v. Holder*, 574 F.3d 893, 901 (8th Cir. 2009)). But neither the BIA and IJ mention Famania at all.

Although it is possible that the BIA and IJ considered but declined to mention this portion of Aguado-Cuevas's testimony, any such consideration is not apparent in the record. As such, the BIA erred by not applying the correct legal framework in which it must show that it meaningfully considered "relevant substantial evidence supporting the alien's claims." *Abdel Masieh*, 73 F.3d 579, 585 (5th Cir. 1996). A failure to do so is grounds for remand. *Iruegas-Valdez*, 846 F.3d at 813. And if, upon remand, the proper consideration of the evidence concerning Famania requires additional factual findings, the BIA should further remand to the IJ for additional factfinding.[3]

---

supporting a likelihood that the applicant 'would be killed, harmed, or murdered, or anything rising to the level of torture.'"

[3] Both parties also argue that the BIA improperly found that Adolfo Sr. was not a public official without also rejecting as plain error the IJ's contrary factual finding. We express some doubt about whether the IJ actually made such a finding as to Adolfo Sr.'s status as a putative state actor as opposed to merely stating that Aguado-Cuevas believes Adolfo Sr. works in the government. But in any event, such a claim of impermissible factfinding by the BIA must first be exhausted in a motion to reconsider. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 359–60 (5th Cir. 2022). Aguado-Cuevas did not exhaust this argument, and we thus lack jurisdiction to review this issue here. *See Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016).

*See Guity Casildo v. Garland*, 851 Fed. App'x 520, 521–22 (5th Cir. 2021) (per curiam).

### B. Likelihood of torture

Although we remand primarily for the BIA to reconsider the state involvement prong of the CAT analysis, we note that both parties acknowledge that the BIA's likelihood of torture analysis suffers from similar deficiencies. Accordingly, to the extent that the BIA finds that Aguado-Cuevas has shown the requisite level of state involvement upon remand, we order the BIA to also consider the likelihood of torture prong under the proper legal framework.

As previously stated, BIA review must reflect a "meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel Masieh*, 73 F.3d at 585. In assessing likelihood of torture, "*all* evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. §§ 208.16(c)(3) (emphasis added), 1208.16(c)(3) (same).[4] "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.* §§ 208.16(c)(2), 1208.16(c)(2).

Aguado-Cuevas claims that he will be murdered by CJNG as punishment for being an informant and debtor following his drug-related activities in the U.S. Concerning the likelihood of torture, Aguado-Cuevas argues—and the Government agrees—that the BIA should have more closely considered evidence of Aguado-Cuevas's actions *in the U.S.* that

---

[4] Specifically, consideration must be given to: (1) whether the petitioner has been tortured in the past; (2) whether the petitioner could relocate to another part of the country where torture would not be likely; (3) whether there are "gross, flagrant or mass violations of human rights within the country of removal"; and (4) "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. §§ 208.16(c)(3), 1208.16(c)(3); *see Tibakweitira v. Wilkinson*, 986 F.3d 905, 911 (5th Cir. 2021).

could characterize him to CJNG as an informant and debtor. Specifically, the BIA did not properly consider evidence that (1) Aguado-Cuevas owed CJNG $120,000 after his botched deal; (2) Aguado-Cuevas was identified by the media as an informant in the prosecution of a CJNG member; (3) a text message identified Aguado-Cuevas as a potential target of the CJNG; (4) a residence where Aguado-Cuevas stayed was ransacked; and (5) CJNG routinely kills debtors and informants. Such evidence goes directly to Aguado-Cuevas's arguments of likelihood of torture as an informant and debtor; such a theory hinges not on events in Mexico but on his actions in the U.S., making him a particular target for torture by CJNG.

The BIA failed to properly consider these pieces of evidence. Instead of discussing this evidence, the BIA based its conclusion solely on a finding of no past harm and the IJ's "reasonabl[e]" characterization of CJNG's visit to his aunt not being indicative of a desire to torture. We reiterate that while we do not require the BIA to "write an exegesis on every contention," it still must "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *See Efe*, 293 F.3d at 908 (internal quotations omitted). The complete lack of discussion of the aforementioned evidence suggests that the BIA has not met this standard. As before, the BIA should remand to the IJ for additional factfinding if necessary. *See supra* II.A.

### III.

For the foregoing reasons, Aguado-Cuevas's petition for review is GRANTED, the decision of the BIA is VACATED, and this case is REMANDED to the BIA for consideration pursuant to the appropriate legal standards as detailed above.