# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 24, 2025

Lyle W. Cayce
Clerk

No. 24-60142

Edgard Ernesto Aguilar-Quintanilla,

*Petitioner*,

*versus*

James R. McHenry III, *Acting U.S. Attorney General*,

*Respondent*.

---

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A088 335 359

---

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.
James L. Dennis, *Circuit Judge*:

Edgard Ernesto Aguilar-Quintanilla, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals (BIA)'s denial of deferral of removal under the Convention Against Torture (CAT). Finding that his removal from the United States did not moot his appeal and, on the merits, that the agency failed to consider critical evidence in its likelihood-of-torture assessment, we GRANT Aguilar-Quintanilla's petition for review and REMAND for further proceedings not inconsistent with this opinion.

No. 24-60142

I

Immigration and Customs Enforcement (ICE) removed Aguilar-Quintanilla from the United States to El Salvador in 2009 pursuant to an order of removal. He unlawfully reentered in September 2022 and was apprehended. The Department of Homeland Security (DHS) then issued a notice of reinstatement of the prior removal order and, following a reasonable fear interview, referred his case to an immigration judge (IJ) for withholding-only proceedings. However, some of Aguilar-Quintanilla's personally identifiable information was thereafter inadvertently disclosed on ICE's website, which prompted DHS to exercise its discretion to dismiss the withholding-only proceedings and issue a notice to appear that placed Aguilar-Quintanilla in removal proceedings.

Aguilar-Quintanilla admitted the allegations of the notice to appear, and the IJ sustained the charge that he was removable as a noncitizen present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Aguilar-Quintanilla then applied for asylum, statutory withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the CAT. Regarding the CAT claim, he claimed primarily that, under the state of exception in effect in El Salvador, the Salvadoran government would torture him as a suspected gang member if he returned there. In particular, he maintained that his specific characteristics—having tattoos and a criminal record in El Salvador, including a 2011 conviction for gang affiliation and a later acquittal on a charge of aggravated homicide—exposed him to a high probability of arrest, detention, and torture upon removal to El Salvador.

Aguilar-Quintanilla's country conditions evidence indicated that El Salvador suffers from "significant human rights issues" including government corruption and official impunity from human rights abuses. In 2022, in response "to the dramatic rise in homicides committed by gangs[,]"

2

the "Legislative Assembly declared a state of exception [pursuant to which] security forces were empowered to arrest anyone suspected of belonging to a gang or providing support to gangs." The evidence indicated that the Salvadoran government pegged individuals as suspected gang members on account of their prior criminal histories and tattoos. Additionally, "the state of exception suspended the [civil] rights to be informed immediately of the reason for detention, to legal defense during initial investigations, to privacy in conversations and correspondence, and to freedom of association." The state of exception led to "[n]umerous reports of arbitrary arrests, invasion of homes, unfair judicial procedures, and deaths of detainees" as well as "allegations of overcrowding and inhuman treatment in the prisons."

Aguilar-Quintanilla also submitted three affidavits in support of his application. The first, from his father Douglas Aguilar, stated that Aguilar-Quintanilla and his life partner, Graciela Rosales, lived together in the father's home in Apopa until Aguilar-Quintanilla left El Salvador in 2022. The family home in Apopa was then put up for rent. In January 2023, a tenant was "the victim of a police search" when "heavily armed people" identifying themselves as police searched the house looking for Aguilar-Quintanilla and Rosales. The second affidavit, from the renter of the house in Apopa, Ileana Estela Serrano de Candelario, stated that she lived in the home owned by the Aguilar-Quintanilla family for over two years. In January 2023, a group of armed men dressed in black arrived at the house saying they were the police and asking for Aguilar-Quintanilla and Rosales. The men never showed Candelario a search warrant issued by a judge. The men eventually left after hitting and pointing a gun at her, but Candelario decided to leave the house to "avoid more problems." Finally, the third affidavit, from his life partner Rosales, stated that policemen shot Aguilar-Quintanilla in his leg in 2016 when he was with her and their daughter on their way to the supermarket.

The policemen stopped them, told Aguilar-Quintanilla to get up and run, and then shot him in the leg as he was running away.

The IJ denied all relief and ordered that he be removed to El Salvador. As to the claim for deferral of removal under the CAT, the IJ found Aguilar-Quintanilla's testimony not credible and noted that general country conditions evidence alone did not entitle him to CAT protection. *See* 8 C.F.R. § 1208.17(a) (deferral of removal under the CAT). On appeal, the BIA adopted the IJ's decision and rejected Aguilar-Quintanilla's arguments challenging the denial of CAT protection. Aguilar-Quintanilla timely filed the instant petition for review from the BIA's decision. His petition only challenges the denial of deferral of removal under the CAT.

After filing his petition for review, Aguilar-Quintanilla filed an opposed motion seeking an emergency stay of removal, which a panel of our court denied. On April 3, 2024, ICE removed Aguilar-Quintanilla from the United States to El Salvador. The next day, El Salvador's Ministry of Justice and Public Security published a picture online of Aguilar-Quintanilla on his knees between armed members of the National Police. *Four Terrorists Returned from the United States Will Be Brought Before Salvadoran Justice*, Gov't of El Salvador (Apr. 4, 2024), https://perma.cc/6XPS-T2FQ.

## II

We review the BIA's decision and consider the IJ's decision only to the extent it influenced the BIA. *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021). The factual determination that an individual is not eligible for CAT protection is reviewed under the substantial evidence standard. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Legal questions and jurisdictional issues, including mootness, are considered de novo.

No. 24-60142

*Arulnanthy*, 17 F.4th at 592; *Mendoza-Flores v. Rosen*, 983 F.3d 845, 847 (5th Cir. 2020).

### III

### A

Aguilar-Quintanilla's removal from the United States during the pendency of his petition for review necessitates this court's consideration of its jurisdiction. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."). "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issue it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999). A case is moot, and thus fails to satisfy the case-or-controversy requirement for federal court jurisdiction, "when it is *impossible* for a court to grant any effectual relief whatsoever to the prevailing party." *Mendoza-Flores*, 983 F.3d at 847 (internal quotation marks and citation omitted) (emphasis added).

The parties both contend that Aguilar-Quintanilla's petition for review is not moot. We agree. The parties point to the fact that ICE may facilitate Aguilar-Quintanilla's return to the United States pursuant to a Return Directive found in ICE Policy Directive 11061.1 (Feb. 24, 2012) should we grant his petition for review. The Return Directive provides as follows:

> Absent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her petition for review was pending, ICE will facilitate the alien's return to the United States if the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for the continued administrative removal proceedings. ICE will regard

No. 24-60142

the returned alien as having reverted to the immigration status he or she held, if any, prior to the entry of the removal and order and may detain the alien upon his or her return to the United States.

Immigr. & Customs Enf't, Policy Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens ¶ 2 (Feb. 24, 2012), https://perma.cc/ZF85-EZA9.

Our court has never resolved this issue: whether a petition for review of the agency's denial of deferral of removal under the CAT becomes moot when the petitioner is removed from the United States during the pendency of his appeal *and* when the petitioner's return could be facilitated under the Return Directive if his petition for review were granted.[1] Circuits that have, however, are in agreement. The availability of an ICE-facilitated return pursuant to the Return Directive constitutes "effective relief" preventing a petition like the one here from becoming moot upon removal. *See, e.g.*, *Lopez-Sorto v. Garland*, 103 F.4th 242, 253 (4th Cir. 2024) ("[T]he [Return] Directive preserves this [petition for review from the denial of deferral of removal under the CAT]. Since it's possible that DHS will facilitate Lopez-Sorto's return to the country, it's possible that a favorable disposition of Lopez-Sorto's appeal will lead to his removal being deferred."); *Del Cid Marroquin v. Lynch*, 823 F.3d 933, 936, 937–41 (9th Cir. 2016) (per curiam) (reviewing a petition for review from the denial of deferral of removal under the CAT and observing that, in light of the Return Directive, a judicial decision in the noncitizen's favor would "at least increase his chances of

---

[1] *Mendoza-Flores*, 983 F.3d at 847, which did not consider the Return Directive and which stated "the petitioner's removal from the United States generally renders the petition moot," is factually distinguishable because "a grant of CAT protection could still lead ICE to facilitate Aguilar-Quintanilla's return under the Return Directive."

being allowed to" return even if not "guarantee[ing] his return"); *Igiebor v. Barr*, 981 F.3d 1123, 1128–30 (10th Cir. 2020) (holding that the noncitizen's removal did not moot his petition for review of denial of deferral of removal under the CAT based on the "potential to be restored to his pre-removal condition if th[e] court grant[ed] his petition" under the Return Directive). We join the Fourth, Ninth, and Tenth Circuits by holding that, on this record, Aguilar-Quintanilla's petition for review challenging the agency's denial of deferral of removal under the CAT is not moot because a judicial decision in his favor could still lead ICE to facilitate Aguilar-Quintanilla's return to the United States pursuant to the Return Directive.

Specifically, Aguilar-Quintanilla "may find refuge in the" Return Directive because it kicks in, for example, "when 'the [noncitizen]'s presence is necessary for continued administrative removal proceedings.'" *Lopez-Sorto*, 103 F.4th at 252. "Though this is a close question, we cannot conclude on this record that, were we to remand this case to the BIA, we would 'know' that the agency would not conclude that [Aguilar-Quintanilla]'s presence would be 'necessary' for continued proceedings." *Id.*; *see also Townes v. Jarvis*, 577 F.3d 543, 548 (4th Cir. 2009) (holding that a live Article III controversy remains unless we "'know[]' that [the] agency will not grant" him the relief he seeks (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)). Should we grant the relief sought here (vacatur and remand), the regulations governing the BIA dictate that, upon remand, it "could, in its discretion, 'issue an order remanding [the] case to an immigration judge . . . for further consideration.'" *Lopez-Sorto*, 103 F.4th at 252 (quoting 8 C.F.R. § 1003.1(d)(7)(iii)). "[T]he IJ would not necessarily be limited in what she could consider upon remand." *Id.* (quoting § 1003.1(d)(7)(iii)). For example, "the IJ could . . . decide that, based on the amount of intervening time or some other consideration, she would like to open the case up for additional factfinding and testimony from" Aguilar-Quintanilla. *Id.* Even though there

exists the possibility that the IJ may conduct a hearing via video conference, "a rational IJ might still decide that in-person testimony is necessary for further proceedings." *Id.* Once physically present in the United States and subject to an order of removal, "there would be a pending removal that the agency could defer." *Id.* at 249 (emphasis omitted). Because it is not "*impossible* for a court to grant any effectual relief whatsoever to the prevailing party," Aguilar-Quintanilla's petition for review is not moot. *Mendoza-Flores*, 983 F.3d at 847 (internal quotation marks and citation omitted) (emphasis added).

B

Turning to the merits of the petition for review, to qualify for CAT relief, the applicant must establish "that it is more likely than not" that he "would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Aguilar-Quintanilla's argument is that, under the state of exception in effect in El Salvador, the Salvadoran government will arrest[2] and torture him as a suspected gang member if he returns there. He points to his tattoos and criminal record in El Salvador, which he contends expose him to a high probability of arrest, detention, and torture upon removal to El Salvador. "[W]hen the country conditions evidence is considered together with [his] criminal record and tattoos and the January 2023 incident in which police came searching for him at his father's home,

---

[2] As mentioned, once removed to El Salvador, the Salvadoran government did, in fact, arrest Aguilar-Quintanilla as a suspected gang member. That fact does not affect our analysis. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

the only reasonable conclusion is that [he] more likely than not would be tortured by Salvadoran security forces if returned to El Salvador."

The BIA upheld and expressly adopted the IJ's finding that Aguilar-Quintanilla failed to "demonstrate[] it is more likely than not that he would be tortured . . . if removed to El Salvador," so we review the IJ's decision on that issue. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). Notably, the IJ's analysis of whether Aguilar-Quintanilla is "more likely than not" going to be "tortured if removed to" El Salvador made no mention of the affidavits describing the January 2023 incident involving police searching for him at his father's home. Instead, in her likelihood-of-torture assessment, the IJ merely noted the unchallenged adverse credibility determination and the precept that general country conditions evidence alone is not enough to establish a probability of torture. The CAT regulations required the IJ to consider the affidavits in her likelihood-of-torture analysis. *See* § 1208.16(c)(3). Our caselaw confirms as much. *Ndifon v. Garland*, 49 F.4th 986, 989 (5th Cir. 2022) ("The applicable CAT regulations requires the BIA to consider evidence of gross, flagrant or mass violations of human rights within the country of removal and any other relevant information regarding conditions in the country of removal *in its likelihood-of-torture assessment*.") (cleaned up) (emphasis added). There is "no exception for cases of adverse credibility determinations." *Arulnanthy* , 17 F.4th at 598.

Thus, where the applicant offers evidence which may independently entitle him to CAT protection, "an adverse credibility finding alone cannot defeat [his] eligibility for relief." *Ndifon*, 49 F.4th at 989. The Government does not dispute that the affidavits corroborating the "[t]he January 2023 incident [are] *key piece[s] of evidence*, as [they] show[] that the Salvadoran government is actively searching for Mr. Aguilar-Quintanilla and that his risk under the state of exception is substantially greater than the average citizen's." *See Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018) (holding

No. 24-60142

it is legal error to "fail[] to address . . . key evidence" even though we do not require the agency to specifically address every piece of evidence put before it). The apparent failure to consider the affidavits in connection with the country conditions evidence warrants remand.[3] *See Ndifon*, 49 F.4th at 989.

As we have cautioned before, remand is no indicator of success on the merits. *See Arulnanthy*, 17 F.4th at 598. The evidence offered must establish a probability that Aguilar-Quintanilla will be subjected to torture in El Salvador. *See* § 1208.16(c)(2). But whether Aguilar-Quintanilla's evidence clears this threshold is not before us. That determination must be made by the agency in the first instance.

IV

For the foregoing reasons, Aguilar-Quintanilla's petition for review is GRANTED. We REMAND for the agency's further consideration of Aguilar-Quintanilla's claim for deferral of removal under the CAT.

---

[3] A few words on the partial dissent. Although the IJ said she considered all evidence, a generic conclusion by the agency that it has reviewed all evidence fails to demonstrate that it has "heard and thought." *See Inestroza-Antonelli v. Barr*, 954 F.3d 813, 818 (5th Cir. 2020) (rejecting an argument that the agency had "meaningfully evaluated her evidence" when the agency had only said it "considered [the petitioner's] arguments"). It is merely a conclusion. The IJ also made a fleeting reference to the January 2023 incident in her analysis of Aguilar-Quintanilla's adverse credibility, but our caselaw is clear that key evidence must be considered "in [the IJ's] likelihood-of-torture assessment," not somewhere else. *Ndifon*, 49 F.4th 986.

No. 24-60142

HAYNES, *Circuit Judge*, concurring in part, dissenting in part:

I concur in the majority opinion's conclusion that Aguilar-Quintanilla's petition for review is not moot but dissent from its decision to remand on the merits of his Convention Against Torture ("CAT") claim.

The majority opinion concludes that the immigration judge ("IJ") did not adequately consider two affidavits—one from Aguilar-Quintanilla's father and another from a woman who was renting his father's house—describing a January 2023 incident in which Salvadoran police allegedly searched for Aguilar-Quintanilla at his father's house. But the IJ's opinion leads me to the opposite conclusion. First, it stated that "[t]he Court has thoroughly reviewed evidence of record, as well as respondent's testimony," and "[t]he Court has considered all the evidence of record, including the documents submitted by respondent." Second, the IJ's opinion specifically discussed the January 2023 incident, noting that Aguilar-Quintanilla never mentioned it and did not disclose it in his application for relief. That disparity influenced the IJ's adverse credibility determination, which in turn contributed to the denial of CAT relief. Third, on two separate occasions, the IJ's opinion notes that Aguilar-Quintanilla's father did not attest to continuing threats against his son.

The agency is not required to "write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Roy v. Ashcroft*, 389 F.3d 132, 139 (5th Cir. 2004) (per curiam) (quotation omitted). The majority opinion concludes that the agency failed to satisfy that standard, relying on *Ndifon v.*

11

No. 24-60142

*Garland*, 49 F.4th 986, 989 (5th Cir. 2022). But this case is not like *Ndifon*.[1] There, we remanded for the BIA to consider country conditions evidence after the BIA said that the petitioner's CAT claim was based on evidence an IJ found to be not credible and that the petitioner "point[ed] to no other objective evidence to support his claim." *Id.* (quotation omitted). In reality, however, the petitioner *had* offered numerous reports published by human-rights and news organizations to support his CAT claim. *Id.* Because the BIA "appear[ed] to deny the existence of evidence that clearly exist[ed] in the record," we concluded that the petitioner "did not receive meaningful consideration of the relevant substantial evidence supporting his claims." *Id.* at 990–91 (internal quotation marks and citation omitted). Unlike *Ndifon*, the agency here acknowledged that "even if [Aguilar-Quintanilla] ha[d] failed to testify credibly, the Court must take into consideration the objective evidence"; made clear that it considered the country conditions evidence; and, as discussed in the preceding paragraph, made clear that it also considered the two affidavits upon which the majority opinion is focused.[2]

_____

[1] Nor is this case like *Inestroza-Antonelli v. Barr*, 954 F.3d 813 (5th Cir. 2020). There, the BIA "did not even mention" the evidence at issue but merely stated that it had considered the petitioner's "arguments." *Id.* at 817–18. We therefore concluded that the BIA's "complete failure to address uncontroverted evidence" warranted remand. *Id.* at 818.

[2] As *Ndifon* points out, 8 C.F.R. § 1208.16(c)(3) requires the agency to consider "'[e]vidence of gross, flagrant or mass violations of human rights within the country of removal' and '[o]ther relevant information regarding conditions in the country of removal'" in its likelihood-of-torture assessment." 49 F.4th at 989 (alterations in original) (quoting 8 C.F.R. § 1208.16(c)(3)). According to the majority opinion, we cannot be satisfied that the agency adequately considered the relevant evidence unless it explicitly indicates such consideration in the specific CAT section of its opinion, rather than elsewhere. I disagree. The issue in *Ndifon* was whether the agency's statements "raise[d] too great a concern that the BIA did not adequately consider the evidence before it," not where the indicators of such consideration could be found. *Id.* at 990. In fixing the boundaries of its analysis, *Ndifon* looked to *Melendez-Monge v. Garland*, No. 20-60814, 2022 WL 1532641 (5th Cir. May 16, 2022), as instructive. *Ndifon*, 49 F.4th at 990. There, we held that the agency's

No. 24-60142

Because I am satisfied that the agency meaningfully considered the substantial evidence before it, I respectfully dissent.

_____

statement that it had considered the petitioner's country conditions reports was enough to "overcome[] our concern that the [agency] did not adequately consider the evidence before it," even though it "did not explicitly consider the[] country reports in [its] analysis of each of [the petitioner's] claims." *Melendez-Monge*, 2022 WL 1532641, at *2 (internal quotation marks and citation omitted).