# United States Court of Appeals for the Fifth Circuit

————————

No. 25-60335

————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2026

Lyle W. Cayce
Clerk

Jose Obed Vasquez-Barrera,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

———————————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A206 635 345

———————————————————————

Before Stewart, Engelhardt, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Jose Obed Vasquez-Barrera ("Vasquez") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial by an immigration judge ("IJ") of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), which resulted in a final order of removal. Vasquez is a bisexual Salvadoran man who suffered abuse by police officers who repeatedly brutalized him

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

while yelling homophobic slurs. Vasquez sought asylum, withholding of removal, and CAT relief in the United States, claiming that he would be detained and tortured upon removal. The Board found that commission of a serious nonpolitical crime barred him from receiving asylum and withholding of removal. The Board also found that Vasquez did not qualify for CAT relief because he had not demonstrated a likelihood of torture upon repatriation. While we agree with the Board's decision to deny Vasquez asylum and withholding of removal, we disagree with the basis of the Board's refusal to grant CAT relief. Accordingly, Vasquez's petition for review is DENIED in part and GRANTED in part, and the matter is REMANDED to the BIA for further consideration in accordance with the following opinion.

I

Vasquez entered the United States in May of 2022, after fleeing El Salvador in April due to ongoing abuse by Salvadoran authorities and the likelihood of future abuse due to his sexual orientation and prior criminal history. In January 2023, the Department of Homeland Security served Vasquez a notice to appear and charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without admission or parole. In February 2023, Vasquez, with the assistance of counsel, admitted the factual allegations and conceded the charge of removability. Vasquez had multiple hearings before an IJ and appealed to the BIA, the proceedings of which are detailed below in Section II. Vasquez was removed to El Salvador in June of 2025, and his family contends that he has been imprisoned since his return.

Vasquez is a bisexual man who was abused by his father from a young age due to his sexual orientation. More recently, he has suffered abuse by Salvadoran police. Before Vasquez fled to the United States, he operated an

No. 25-60335

automobile repair shop connected to the home that he shared with his female romantic partner, Lorena Cristina Alvarado Sequeira ("Lorena") and their two children.  Vasquez and Lorena resided together from mid-2013 through Vasquez's departure from El Salvador in April of 2022.  Vasquez and Lorena had an "open relationship" wherein they were permitted to have sexual encounters with other partners; Vasquez had sexual encounters with other men from about 2014 to 2017 but "did not feel safe to outwardly be in a relationship with a man."

From 2008 to 2010, when he was a teenager, Vasquez suffered serious physical abuse by his father who inflicted pain on Vasquez while yelling homophobic slurs at him and asserting that the abuse might turn him into a man.  In 2010, Vasquez and his mother obtained a restraining order against Vasquez's father.  Vasquez contends that his father, a former sergeant in the Salvadoran air force, is an influential man with connections to the police, particularly to his friend Officer Daniel Gutierrez.

In early 2017, Officer Gutierrez encountered Vasquez and kicked Vasquez behind the knees, smacked him in the head, and said the encounter was a gift from his "Catracho," a nickname for Vasquez's father.  Gutierrez also cast homophobic slurs at him and spat on him.  Later, in March of 2017, Gutierrez and other officers arrested Vasquez at his home in the middle of the night, accusing him of association with the MS-13 gang.[1]  Vasquez subsequently was convicted of the crime "Terrorist Organizations to the

---

[1] Vasquez contends he has no connection to the MS-13 gang except for an occasion in 2014 when MS-13 gang members threatened him, causing him to flee from El Salvador. Vasquez entered the United States for the first time in March 2014, but he was deported following a short interview with Border Patrol agents.  The agents told him that his experience with the gang members did not merit asylum.  Vasquez did not mention other potential grounds for humanitarian relief, such as his sexual orientation, during the brief interview.

detriment of the Salvadoran State" and was sentenced to a suspended three-year prison sentence and three years of supervised release. Vasquez was represented by private counsel during those proceedings. On the advice of counsel, Vasquez signed a guilty plea, which he understood as his only means to leave prison where he was being abused.

While in pre-trial detention, Vasquez contends he was regularly abused by Gutierrez and other guards, who yelled homophobic slurs at him and suggested the abuse might turn him into a man. Vasquez signed a guilty plea that afforded him three years' supervised release in lieu of imprisonment. Vasquez was released from prison at the end of 2017 and successfully completed probation in 2020.

Following Vasquez's release, Officer Gutierrez, another police officer, and two military members came to Vasquez's home in January 2018. They beat him, kicked him, took his boots, and shouted homophobic insults at him. Later in spring 2018, Officer Gutierrez and a few other police officers encountered Vasquez at a vehicle checkpoint near his home; they ordered Vasquez out of his vehicle and beat and kicked him. Later in 2018, Gutierrez and other officers beat Vasquez to the point of unconsciousness and stripped him down to his undergarments. Vasquez's romantic partner and mother of his children, Lorena, found him bloody on the ground. Officer Gutierrez beat Vasquez on other occasions in 2018, prompting Vasquez to seek and receive permission from his probation officer to move to a nearby town to evade Gutierrez. Vasquez opened an autobody shop attached to his new home.

In December 2020, Officer Gutierrez again pursued Vasquez. At Vasquez's body shop, Gutierrez, accompanied by three to four other uniformed officers, beat and kicked Vasquez, yelled homophobic slurs at him, and stole money found in his pocket. Vasquez then moved back to his hometown, but to a different house, and again operated his body shop from

his home.  In April of 2022, Vasquez received a note demanding $500 and threatening "consequences" for failure to pay.  Vasquez delivered $200 to the drop-off location with an explanation that he had no other money.  Later that April, Vasquez received a second note demanding $900 and calling him homophobic slurs.  Vasquez failed to pay, and the next day, Officer Gutierrez and four other police officers came to Vasquez's house and beat him and kicked him, demanding payment.  Gutierrez stuck his rifle in Vasquez's mouth, calling him a "f*ggot" while saying "today you're going to die."  Vasquez gave him $300—all that he had—and begged for his life.  Gutierrez told Vasquez he had a couple of days to provide the rest of the money and implied he would be killed for noncompliance.  Vasquez fled just two days later, arriving in the United States on May 25, 2022.

*State of Exception.*  In 2022, the Salvadoran government declared a "state of exception" to combat gang activity, authorizing Salvadoran authorities to arrest anyone "suspected of belonging to a gang," even without a warrant.  Authorities often arrest individuals based on prior involvement with the criminal justice system.  Other due process protections were also eroded by the state of exception, such as the right to legal counsel, bail eligibility, and certain pre-trial detention limitations.  To process the increased number of detainees, "judges held mass pretrial detention hearings for up to 300 detainees at the same time."  Originally slated to last thirty days, the state of exception has been consistently renewed since its inception.

## II

In the third immigration court opinion,[2] the IJ found that Vasquez had not sufficiently corroborated his story and found Vasquez not credible.  The

---

[2] Vasquez appealed his case before the BIA three times before his appeal reached our court.  In June of 2023, the original IJ entered a decision denying Vasquez asylum, withholding of removal, and CAT relief.  The BIA twice remanded the case to the IJ to

No. 25-60335

BIA adopted the IJ's finding that Vasquez had not sufficiently corroborated his story but explicitly refrained from addressing the IJ's credibility findings. The BIA found that Vasquez was barred from asylum and withholding of removal by the serious nonpolitical crime bar because of his criminal conviction, finding that Vasquez had failed to corroborate his testimony that he was innocent of the crime for which he was convicted.[3] Accordingly, the BIA denied Vasquez asylum and withholding of removal. The BIA further found that Vasquez had not proven that he was likely to be subjected to torture upon removal to El Salvador and, thus, denied Vasquez relief under CAT.

Vasquez submitted to the record a certified document indicating his conviction for the crime of "Terrorist Organizations to the detriment of the Salvadoran State." Although the document indicates that it "consists of twenty-five useful pages," Vasquez submitted only the single page evidencing his conviction into the record. Although Vasquez pleaded guilty, he contends that he did not understand his signature to constitute a guilty plea at the time; instead, he believed it was the only way to get out of prison. Because his defense rested on claims of actual innocence and the factual circumstances underlying the conduct of the offense, the Board found that his claims could have been corroborated or disproven by the remaining conviction documents. The BIA reasoned that it was unable to accept Vasquez's narrative that he was innocent or that the crime was not

_____

make further factual findings regarding whether Vasquez committed a serious nonpolitical crime and whether he was eligible for CAT relief. Following the second remand, a different IJ was assigned to the case, who conducted three hearings. All three issues—Vasquez's application for asylum, withholding of removal, and CAT relief—were before the IJ on the third decision. Our court addresses only the third opinion.

[3] For simplicity, this opinion occasionally attributes to the Board the IJ's findings that the Board later adopted.

6

No. 25-60335

sufficiently serious because it is not permitted to look outside the record for other evidence concerning the crime of conviction.

The IJ certified one of Vasquez's experts, Nicola Chavez Courtwright, as an expert in LGBTQI+ issues in El Salvador but refused to certify Vasquez's other proffered expert, Dr. Joseph Wiltberger, as an expert in the same subject. Courtwright testified that starting in 2017, the Salvadoran government began exhibiting "outright governmental hostility to" LGBTQI+ individuals. Courtwright further testified that she was "extremely concerned about continued persecution by [Salvadoran law enforcement]," especially due to the current state of exception. Courtwright testified that the state of exception, which was enacted after Vasquez fled El Salvador, reduced "checks and balances on both police and military," so she fears that Vasquez would be subjected to even greater abuse now that criminal procedure standards have been relaxed.

Vasquez timely filed a petition for review on June 16, 2025. *See* 8 U.S.C. § 1252(b)(1). On appeal, Vasquez argues that the Board erred in finding that the serious nonpolitical crime bar prevented him from receiving asylum and withholding of removal; finding that he does not merit protection under CAT; and finding that the IJ did not violate his due process rights by exhibiting prejudice. Vasquez's counsel asserts that he was removed to El Salvador and imprisoned in June 2025 although there is no record evidence to reflect this.[4]

_____

[4] Because evidence of Vasquez's removal and subsequent imprisonment is not included in the administrative record, it is beyond the scope of this appeal. *See* 8 U.S.C. § 1252(b)(4)(A) (limiting appellate review of a removal order to the record on appeal).

No. 25-60335

## III

We have jurisdiction to review a final order of removal by the BIA under 8 U.S.C. § 1252(a). The government did not raise the issue of mootness; however, we must consider jurisdictional issues sua sponte. *Aguilar-Quintanilla v. McHenry*, 126 F.4th 1065, 1068–70 (5th Cir. 2025) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). Although Vasquez has been removed from the United States, a petition for review is not mooted by virtue of removal. *Id.* at 1068–69 (holding that the government could facilitate return of petitioner following a grant of CAT protection).

We review the BIA's decision and the IJ's decision to the extent that it influenced the BIA. *Id.* at 1068; *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018). Questions of law are reviewed de novo, and factual findings are reviewed for substantial evidence. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). Under the substantial evidence standard, our court may not overturn a factual finding unless "the evidence *compels*" a contrary result. *Id.* at 518 (citation modified).

## IV

"An asylum applicant must demonstrate 'persecution or a well-founded fear of persecution on account of [one of five grounds:] race, religion, nationality, membership in a particular social group, or political opinion.'" *Efe v. Ashcroft*, 293 F.3d 899, 904 (5th Cir. 2002) (quoting 8 U.S.C. § 1101(a)(42)(A)). An otherwise qualifying asylum or withholding of removal applicant may be barred from relief by a finding that the applicant committed a serious nonpolitical crime prior to entering the United States. *Id.* at 904–05. Protection under CAT merits a separate analysis from asylum and withholding of removal. *Id.* at 906–07. Unlike asylum, CAT does not require an applicant to be persecuted due to one of the five specified categories; however, it requires a likelihood of torture, a higher bar than

persecution. *Id*. at 907. CAT prohibits the government from removing a person to another country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* (citation modified). An applicant found to have committed a serious nonpolitical crime may still seek deferral of removal under CAT. *Hammerschmidt v. Garland*, 54 F.4th 282, 290 (5th Cir. 2022). The following analysis explains (A) that the Board did not err in applying the serious nonpolitical crime bar to Vasquez's asylum and withholding of removal claims; (B) the Board should reconsider whether Vasquez is eligible for deferral of removal under CAT; and (C) the Board did not abuse its discretion in finding that Vasquez's due process rights were not violated by the proceedings.

A

The BIA found serious reasons to believe that Vasquez had committed a serious nonpolitical crime, barring him from receiving asylum and withholding of removal. The BIA found that Vasquez's conviction and his uncorroborated protestations that he did not actually commit the crime sufficiently proved that he had committed a serious nonpolitical crime. The Board is precluded from relying on facts outside the administrative record. 8 U.S.C. § 1252(b)(4)(A). Thus, because the record contains no evidence concerning the conviction, other than the conviction itself, the record does not compel a conclusion contrary to that of the Board. *See Efe*, 293 F.3d at 905. Thus, we deny Vasquez's petition to review the Board's decision to deny asylum and withholding of removal.

i

Commission of a serious nonpolitical crime prior to arrival in the United States may bar an applicant from being granted asylum and withholding of removal. 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii); *Efe*, 293 F.3d at 904–05. The BIA's conclusion that an applicant has

committed a serious nonpolitical crime "'is a finding of fact that we review under the substantial evidence test.'" *Efe*, 293 F.3d at 905 (quoting *Zamora-Morel v. INS*, 905 F.2d 833, 838 (5th Cir. 1990)). We only reverse the BIA's factual findings if the evidence compels a contrary result. *Id.* The serious nonpolitical crime inquiry involves a two-step analysis. First, the government must prove that there are "serious reasons" to believe the applicant has committed a serious nonpolitical crime. 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii). Second, if the government carries its burden at the first step, then the applicant must demonstrate by a preponderance of the evidence that the serious nonpolitical crime bar does not apply to them. 8 C.F.R. § 1240.8(d).

On appeal, Vasquez contends that he did not commit the crime for which he was convicted and that mere evidence of conviction should not indicate that he actually committed the crime because his arrest "was the product of homophobic harassment" and his guilty plea was coerced. Vasquez further argues that the offense was insufficiently serious to require imposition of the serious nonpolitical crime bar. The government counters that the serious-reasons-to-believe standard has been satisfied in other cases by evidence less convincing than a conviction and that Vasquez unsuccessfully demonstrated that the bar should not apply. The government also argues that the BIA relied, not on the fact of his mere arrest, but rather on his conviction, which Vasquez has not argued was caused by homophobic discrimination. The government also emphasizes the BIA's finding that Vasquez failed to provide evidence corroborating his protestation of actual innocence and that he was coerced into signing a guilty plea.

ii

First, Vasquez argues that his testimony is sufficient to demonstrate that the serious nonpolitical crime bar should not apply to him. Even if true,

No. 25-60335

Vasquez provides no legal authority to indicate that this evidence—if deemed credible—suffices to rebut the government's showing that he committed a serious nonpolitical crime. The IJ concluded that the conviction provided a serious reason to believe that Vasquez had committed a serious nonpolitical crime and noted that engaging in terroristic activity renders one excludable under 8 U.S.C. § 1182(a)(3). Vasquez's arguments on appeal do not explain why no reasonable factfinder could determine that conviction of a crime concerning terrorist organizations does not provide serious reasons to believe that an applicant has committed a serious nonpolitical crime, absent further evidence explaining the circumstances of conviction or the nature of the crime. Therefore, Vasquez has not overcome the substantial evidence review standard.

Second, Vasquez argues that the BIA erred in finding that the crime for which he was convicted constitutes a serious nonpolitical crime because the BIA failed to analyze the nature of his crime of conviction. While the prior proceedings indicate that the BIA failed to conduct any analysis into the political nature of the crime of conviction, Vasquez's appeal targets not the crime's political character, but its seriousness. Vasquez contends that his crime of conviction can be predicated on "unintentional or reckless conduct" calling into question whether the crime rises to that of a serious nonpolitical crime. Here, too, Vasquez fails to provide any compelling legal authority that supports his argument.[5] He likewise fails to demonstrate here

---

[5] While Vasquez cites to cases describing various crimes courts have found to constitute serious nonpolitical crimes, Vasquez does not demonstrate why the BIA's reasoning is insufficient due to its failure to consider the facts underlying the crime of conviction. Vasquez cites *Matter of E-A-*, which he argues demonstrates that courts must judge the nature of the crime based on the factual circumstances underlying it; however, that case concerns conduct which would constitute crimes in the U.S. but for which the petitioner was neither charged nor accused. *Matter of E-A-*, 26 I&N Dec. 1, 2–3 (BIA 2012). Here, however, Vasquez *was* charged and convicted of the crime at issue. His attempts to

11

why the record, notably lacking support for his contentions, compels a finding contrary to that of the Board.

iii

Furthermore, the Board did not err in concluding that Vasquez failed to corroborate his testimony that he did not commit the crime of conviction and his guilty plea was coerced. The Board faulted Vasquez for failing to provide the report accompanying his judgment of conviction and for failing to submit a letter from his attorney who obtained the guilty plea.

Vasquez submitted a certified judgment of conviction for his 2017 conviction for "Terrorist Organizations to the detriment of the Salvadoran State." The judgment indicates that there is a twenty-five-page "certification of the sentence conviction" (the "investigative report"), which contains the investigation of the case and which seems to be part of the judgment packet but which was not submitted. The IJ understood the certified judgment as indicating that it was part of a twenty-five-page packet that included the investigative report.

The BIA agreed with the IJ that his conviction was a serious reason to conclude that he had committed a serious nonpolitical crime and that he had not shown error in this conclusion, particularly in light of his failure to obtain the investigative report. The Board agreed with the IJ that his procurement of the certified judgment showed that he could and should have gotten the investigative report and specifically rejected Vasquez's argument that he could not get the investigative report because he feared persecution

––––––––––––––––––––––––––––

claim that his conviction was a result of improper targeting, without any evidence other than the conviction itself, are therefore unavailing.

from the Salvadoran Government. Although the IJ made an adverse credibility finding, the BIA did not address it.

The Immigration and Nationality Act ("INA") provides that "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration." 8 U.S.C. § 1158(b)(1)(B)(ii). However, the INA also provides that, when the IJ determines that corroborating evidence should be provided, the applicant's testimony alone shall suffice only if "the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* Otherwise, failure to provide corroborating evidence may preclude an applicant's claim for relief. *Avelar-Oliva v. Barr*, 954 F.3d 757, 764 (5th Cir. 2020). When an IJ finds that corroborating evidence is necessary, it must give the applicant an opportunity to explain their failure to provide the evidence but need not give the applicant "additional *advance* notice of the *specific* corroborating evidence necessary to meet the applicant's burden of proof." *Id.* at 770 (emphasis in original) (internal quotations omitted). The Board's determinations "with respect to the availability of corroborating evidence" are factual findings that our court reviews for substantial evidence and will uphold "unless the court finds a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Rui Yang v. Holder*, 664 F.3d 580, 587 (5th Cir. 2011) (citation modified).

The substantial gap in the record is due to Vasquez's failure to adduce a corroborating item he should have been able to procure, and he does not show that the evidence compels a conclusion to the contrary. Vasquez fails to cite to any authority to show that it was unreasonable to expect him to obtain the documents under these circumstances.[6] The Board had before it

---

[6] Vasquez argues that it was unreasonable to expect him to obtain the requested corroborating evidence. Vasquez cites caselaw showing that family affidavits, in contrast,

No. 25-60335

only Vasquez's testimony claiming innocence and the judgment of conviction concluding the opposite. Because the Board is not permitted to look outside the record and because the record shows that Vasquez committed a crime the Board interpreted to involve terroristic behavior, Vasquez cannot show that a reasonable factfinder could not agree with the Board's decision to apply the serious nonpolitical crime bar. Accordingly, the BIA did not err in denying Vasquez asylum and withholding of removal; thus, Vasquez's petition for review with respect to these claims is denied.

B

Although the serious nonpolitical crime bar renders Vasquez ineligible for asylum and withholding of removal, it does not prevent deferral of removal under CAT. *See* 8 C.F.R. § 1208.17(a). The BIA found that Vasquez was not entitled to deferral of removal under CAT because he did not sufficiently demonstrate that he was likely to be tortured upon removal to El Salvador. The BIA further found that Vasquez's testimony regarding past torture was not sufficiently corroborated.[7]

To merit CAT relief, an applicant must demonstrate "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c). "Torture is defined as any act

_____

are documentation that courts frequently recognize as reasonably obtainable, but Vasquez does not cite to any caselaw to show that the documents requested here, an investigative report and an attorney letter, were *not* reasonably available. *See, e.g.*, *Rui Yang*, 664 F.3d at 583–84, 587 (finding it unreasonable for applicant to fail to provide letters from his parents even though he usually communicated with them via telephone); *Gidey v. Garland*, No. 21-60182, 2023 WL 4174063 (5th Cir. June 26, 2023) (finding it unreasonable that applicant failed to ask family to provide documents that they were found to possess). Thus, Vasquez has not proven that no reasonable factfinder could have come to the same conclusion as the Board.

[7] While the IJ also found that Vasquez's testimony lacked credibility, the BIA did not adopt any credibility findings; therefore, Vasquez's credibility is not at issue on appeal.

by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person, . . . when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "CAT does not require persecution, but the higher bar of torture." *Efe*, 293 F.3d at 907. When the likelihood of torture is assessed, the following evidence should be considered: "past torture inflicted upon the applicant;" the possibility of avoiding future harm by "relocat[ing] to a[nother] part of the country of removal"; "gross, flagrant or mass violations of human rights within the country of removal"; and "other relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

The BIA found that Vasquez had not proven eligibility for deferral of removal under CAT because he failed to demonstrate that the Salvadoran government would acquiesce to any torture. The Board also held that Vasquez failed to demonstrate that he is likely to be detained upon arrival and that, even if he were incarcerated, Vasquez had not proven that he was at risk of mistreatment. Because the Board found that the lack of government acquiescence to Vasquez's abuse was dispositive of his CAT request, it did not address the IJ's additional findings, including whether Vasquez's abuse by Officer Gutierrez was sufficiently severe to constitute torture. The Board erred in holding that Vasquez failed to show that he would be tortured by or at the acquiescence of the state; accordingly, we vacate the denial of deferral of removal under CAT and remand for further consideration of whether, under the correct legal standard, Vasquez is likely to suffer abuse by or with the acquiescence of the government that is severe enough to merit CAT relief.

No. 25-60335

i

The Board did not err in concluding that Vasquez has not demonstrated that he is likely to be incarcerated then subjected to torture based on his prior criminal conviction and his sexual orientation. To prevail, Vasquez must show that the record *compels* the conclusion that he is likely to be detained upon return to El Salvador and that he is likely to be tortured once detained, a high burden on the facts surrounding both points. Without considering whether the Board erred in finding that Vasquez is not likely to be incarcerated upon removal, the Board did not err in finding that Vasquez is unlikely to be tortured if he were incarcerated; thus, Vasquez cannot demonstrate that the Board erred in finding that he is ineligible for deferral of removal on these grounds.

The BIA found that "generalized reports of individuals suffering human rights violations do not demonstrate that the applicant, in particular, will likely face the same fate." The government argues that numerous cases support the BIA's holding that generalized reports of inhumane prison conditions and generalized country evidence are insufficient to show that a particular applicant is likely to be tortured upon removal. *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019) (finding that generalized country evidence does not demonstrate likelihood of state-sanctioned torture of individual); *Aviles-Tavera v. Garland*, 22 F.4th 478, 486 (5th Cir. 2022) (finding general poor country conditions insufficient to merit CAT relief); *Morales v. Sessions*, 860 F.3d 812, 818 (5th Cir. 2017) (finding news articles describing unsafe conditions insufficient to merit CAT relief). Although Vasquez claims that he was in fact tortured in prison in 2017, which past torture might support a finding that he is likely to be tortured in prison in the future, the Board found these allegations were not corroborated, and Vasquez has not shown that the record compels a finding that these events occurred. *See Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

No. 25-60335

ii

While the BIA did not err in finding that Vasquez was unlikely to be incarcerated then tortured upon repatriation to El Salvador, the BIA did err in holding that Vasquez was unlikely to be tortured by Officer Gutierrez and/or other Salvadoran authorities upon removal, even if he is not imprisoned, because the abuse he suffered in the past was not limited to that suffered while he was incarcerated. The Board affirmed the IJ's finding that Vasquez failed to show that the government would acquiesce to any torture of Vasquez. Although the IJ also found that the abuse Vasquez suffered by Officer Gutierrez does not rise to the level of torture required for CAT relief, the Board did not adopt this part of the IJ's decision because it found the lack of governmental acquiescence "dispositive of the respondent's request for deferral of removal under the CAT." Because the Board erred in holding that Vasquez failed to prove that his abuse by Officer Gutierrez was not by or at the acquiescence of the government, we remand to the BIA for further consideration of the severity of the abuse by Officer Gutierrez and whether it was "inflicted *by* . . . or with the consent or acquiescence of" the government. 8 C.F.R. § 1208.18(a)(1) (emphasis added).

1

The BIA erroneously held that the abuse by Officer Gutierrez was not by or at the acquiescence of the state because Vasquez failed to prove "that the Salvadoran government, as a whole, would condone any torture inflicted upon [Vasquez], or that [it] would turn a blind eye to any torture" of Vasquez. To qualify for CAT relief, an applicant must demonstrate a likelihood of torture "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Thus, an applicant who demonstrates that the suffering is "inflicted by . . . a public

17

official or other person acting in an official capacity" need not separately prove that such suffering was inflicted with the acquiescence of the state. *Garcia v. Holder*, 756 F.3d 885, 891–92 (5th Cir. 2014) (finding that "government acquiescence need not necessarily be an officially sanctioned state action" when an official acts "under color of law"); *see also Marmorato v. Holder*, 376 F. App'x 380, 385 (5th Cir. 2010) (per curiam) (finding that a public official acts in their "official capacity" when acting "under color of law"); *Iruegas-Valdez v. Yates*, 846 F.3d 806, 809–10, 813 (5th Cir. 2017) (holding that actions of "low-level officials, such as police officers" may suffice).

An official acts under color of law when the improper conduct occurs as part of an officer's performance of their official duties. *Garcia*, 756 F.3d at 892. This threshold is met when an applicant shows that government officials "were previously actually involved in or enabled the extortion and beating and are likely to be involved again in the future." *Id.* at 893. Here, the record suggests—and the Board may find on remand—that Officer Gutierrez acted in an official capacity when he allegedly beat and extorted Vasquez while wearing his police uniform and with the assistance of his fellow police officers. The BIA also mistakenly found that Officer Gutierrez acted as a "rogue" officer and not on behalf of the state when he extorted Vasquez. Our court has rejected the notion that "rogue" conduct fails to satisfy the CAT standard, finding that even "acts motivated by an officer's personal objectives are under color of law when the officer uses his official capacity to further those objectives." *Id.* at 892 (citation modified).

The Board also indicated that Officer Gutierrez was not likely to continue abusing Vasquez because El Salvador has since made efforts to "combat[] corruption." While the 2023 State Department Report shows that "[t]he government took credible steps to identify and punish officials who may have committed human rights abuses," Vasquez argues, through

country conditions evidence of reduced procedural requirements for arrest and through his personal interactions with Officer Gutierrez, that any progress the government may have made would not necessarily protect him from future harm at the hands of his father's connections, especially Officer Gutierrez.    Further, that finding supports only the holding that the government would not condone Officer Gutierrez's actions; as stated, CAT relief does not require that the government acquiesce to torture when the torturer acts under color of law, *Garcia*, 756 F.3d at 891–92; *Marmorato*, 376 F. App'x at 385.  Thus, the Board erred in finding that any future abuse by Officer Gutierrez would not occur by or at the acquiescence of the state.  On remand, the Board must apply the proper legal standard articulated here to determine whether Vasquez was harmed by a public official acting under color of law or with the acquiescence of the government.

2

Although the IJ found that the abuse Vasquez endured by Officer Gutierrez does not constitute torture, as required for CAT relief, the BIA did not adopt this holding.  We only consider the IJ's opinion to the extent it influenced the BIA, *Aguilar-Quintanilla*, 126 F.4th at 1068; here, the BIA specifically stated that it had not considered any of the IJ's other findings regarding CAT eligibility.  Accordingly, we remand to the BIA to determine whether the severity of the abuse suffered by Vasquez qualifies Vasquez for CAT relief.  In doing so, the Board should consider affidavits detailing Vasquez's alleged abuse.

3

The Board erred in its conclusory analysis of evidence of Vasquez's alleged abuse.  The affidavits submitted by Vasquez's mother, romantic partner, and business partner are all corroborative of those beatings, but the BIA provided no reasoning why it failed to consider the statements.  Such

evidence may be helpful in corroborating whether the abuse Vasquez suffered rises to the level of torture and should be considered on remand. *See id.* at 1070–71 (remanding to BIA for, in part, failure to consider relevant affidavits); *Rui Yang*, 664 F.3d at 587–88 (affirming denial of CAT claim for failing to provide affidavits from family members to corroborate his story); 8 C.F.R. § 1208.16(c)(3) (mandating consideration of "all evidence . . . of past torture inflicted upon the applicant"). The Board did not analyze the substance of these affidavits; instead, it found that the statements "were obtained after the BIA issued two written decisions in this case that were transmitted to [Vasquez]," without providing any reasoning as to how the submission timing impacted its ability to review the information contained therein. In fact, the Board commented on other portions of these same affidavits without hinting that their usefulness was encumbered by the timing of their submission, and there is no evidence that they were not timely submitted. "'We do not require the BIA to specifically address every piece of evidence put before it,' but it is error for the agency to 'fail[] to address . . . key evidence.'" *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018) (quoting *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996)).

The BIA affirmed the IJ's conclusion that the witness affidavits submitted by Vasquez failed to corroborate Vasquez's testimony regarding harm by police "because each letter omits some detail from the respondent's testimony." The BIA found that Vasquez failed to demonstrate error in the IJ's ruling when he argued that no single witness can corroborate every piece of his testimony. While true, we find that each witness may corroborate important aspects of his testimony, requiring remand for the Board to determine whether Vasquez's testimony was corroborated.

The record indicates that helpful testimony regarding Vasquez's abuse by police and military was provided by Vasquez's mother; romantic partner, Lorena; and business partner, Rony Antonio Hernandez Garcia

("Rony"). The IJ did not indicate that any of this testimony lacked credibility, but instead, mostly ignored it. The IJ simply criticized the mother's testimony for failing to mention the 2017 arrest and for failing to confirm his bisexual identity without indicating that the mother's account matched Vasquez's testimony regarding other material information, specifically one of the 2018 beatings by police and childhood abuse by his father. As to Lorena's testimony, the IJ commented that Lorena observed one of the 2018 beatings but did not credit her testimony as corroborating evidence of any of the 2018 beatings and did not mention that she also witnessed the 2020 beating. The IJ did not meaningfully comment on Rony's testimony.

Absent explanation as to why these statements—which confirm the testimony provided by Vasquez regarding two of the 2018 beatings, the 2020 beating, and the 2022 extortion scheme—lack credibility, the record suggests a finding that Vasquez's testimony could be corroborated. While true that these testimonials do not corroborate the beatings Vasquez alleges he suffered by prison guards while imprisoned or the manner of his arrest in 2017, *see Mohndamenang v. Garland*, 59 F.4th 211, 215–16 (5th Cir. 2023) (rejecting affidavits from applicant's family members because they failed to witness the conduct firsthand), the BIA could easily find, with three corroborating affidavits, none of which were found to be contradictory or non-credible, that Vasquez had been subjected to past torture, which could establish likelihood of future torture, without regard for the in-prison beatings or the circumstances of the 2017 arrest.

Accordingly, Vasquez's petition for review with respect to his eligibility for deferral of removal under CAT is granted. We vacate and remand for further consideration of the likelihood that Vasquez will be tortured upon removal, even if he is not imprisoned.

C

The BIA found that the IJ did not violate Vasquez's due process rights by choosing not to certify Wiltberger as an expert and by allegedly demonstrating extrajudicial bias.  On appeal, Vasquez argues (i) that the IJ should have certified Wiltberger as an expert witness and (ii) that the IJ exhibited extrajudicial bias through her treatment of Vasquez and his counsel.  We review claims of due process violations de novo.  *Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012) (per curiam).  Accordingly, we find that no due process violations occurred.

i

The IJ chose not to certify Wiltberger as an expert because he lacked credentials establishing that he was an expert on LGBTQI+ issues in El Salvador, in particular, and the BIA affirmed this finding.  Wiltberger testified that he has done field work in El Salvador since the state of exception began in 2022 and has interviewed "government workers, non-government organizations, human rights advocates, and members of the LGBTQI-plus community about the security situation and the causes of displacement from that country."

Vasquez bears the burden of proving that the IJ showed "substantial prejudice" in her decision not to certify the proffered expert.  *Id.* at 180.  Otherwise stated, Vasquez must show "that the IJ's assessment of [Wiltberger's] expertise was an abuse of discretion."  *Id.*  In *Bouchikhi*, this court held that it was not an abuse of discretion for the IJ to decline to certify a witness as an expert regarding religious extremism in Algeria when his then-published works focused on "'social capital'" in the Middle East.  *Id.* at 181.  Similarly, here, Vasquez has not established that the IJ abused her discretion by finding that Wiltberger was not an expert in LGBTQI+ issues in El Salvador, specifically, because he had failed to publish work on the subject at

issue and had failed otherwise to demonstrate sufficient expertise. Thus, the IJ did not abuse her discretion in emphasizing Wiltberger's written work over his recent fieldwork and indication that El Salvador is his current area of focus.

ii

Vasquez next contends that the BIA erred in finding that the IJ did not exhibit bias such that Vasquez's due process rights were violated. Vasquez argues that the IJ was overtly hostile to his counsel and forced Vasquez to repeatedly discuss derogatory, homophobic remarks in a manner that was designed not to develop the record but to "bully[]" Vasquez. Namely, Vasquez faults the IJ for repeatedly asking him why he claims that "[t]he term f[*]ggot . . . is a homophobic word." Vasquez also argues that the IJ exhibited bias against his counsel by "display[ing] repeated hostility toward counsel that crossed acceptable boundaries and prevented counsel from presenting key evidence."

"[A] due process violation can be premised upon the absence of a neutral arbiter." *Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009). "'Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Judicial hostility does not violate due process unless the behavior "'reveal[s] an opinion that derives from an extrajudicial source'" or demonstrates "'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* (quoting *Liteky*, 510 U.S. at 555).

The record shows that the IJ used the slur "f*ggot" twice in the challenged line of questioning. While likely true that the term is unambiguously a homophobic insult, the IJ's seeking confirmation that Vasquez felt discriminated against when the term was used against him does

No. 25-60335

not constitute judicial bias of the ilk described in *Wang* and *Liteky*. Similarly, the record shows that the IJ addressed Vasquez's counsel in a choppy manner and prevented counsel from speaking on numerous occasions, but these instances, likewise, do not rise to the level of extrajudicial bias required by the jurisprudence. Instead, the record shows that the IJ was preventing counsel from testifying at improper times, which does not constitute a due process violation. Thus, Vasquez's petition for review regarding this issue is denied.

V

For the foregoing reasons, Vasquez's petition is DENIED in part and GRANTED in part. Accordingly, this matter is REMANDED to the BIA for further proceedings consistent with this opinion.